[No. 45096. En Banc. January 8, 1979.]

THE STATE OF WASHINGTON, *Appellant,* v. HUGH W. STROH, *Respondent.*

*Christopher T. Bayley, Prosecuting Attorney, Paul J. Bernstein, Senior Deputy,* and *Barbara Johnson, Deputy,* for appellant.

*James S. Kempton,* for respondent.

ROSELLINI, J.—The respondent, an attorney, was charged with the crime of tampering with a witness, which is defined in RCW 9A.72.120:

> (1) A person is guilty of tampering with a witness if he attempts to induce a witness or person he has reason to believe is about to be called as a witness in any official proceeding to:
> (a) Testify falsely or, without right or privilege to do so, to withhold any testimony; or
> (b) Absent himself from such proceedings.
> (2) Tampering with a witness is a class C felony.

It appears that a police officer had arrested one of the respondent's clients, charged him with driving while under the influence of intoxicating liquor, and requested that he submit to a Breathalyzer test. The client's refusal was reported to the Department of Motor Vehicles, pursuant to RCW 46.20.308 which provides for mandatory license revocation under such circumstances. A hearing was scheduled, apparently at the client's request as provided therein.

Having petitioned for a delayed prosecution of the traffic charge, the respondent sought the aid of the prosecutor in attempting to influence the officer not to appear at the administrative hearing. He was told that the prosecutor played no role in hearings before the Department of Motor Vehicles. The respondent approached the officer directly. The latter refused the respondent's request that he either ignore his subpoena and refrain from attending the hearing, or testify that he had told the client that his license *might* be revoked, rather than that it *would* be revoked if he refused the Breathalyzer test.

The prosecution was dismissed upon the respondent's motion, the court holding that the statute violates the due process clause of the fourteenth amendment to the United States Constitution, by reason of the fact that it contains no express requirement of a "general intent." The correctness of that holding is the sole question before us for review.

We approach the question having in mind the established principle that statutes are presumed constitutional. *Seattle v. Drew,* 70 Wn.2d 405, 423 P.2d 522, 25 A.L.R.3d 827 (1967).

In support of the judgment, the respondent argues that the statute is fatally defective because it does not expressly include as one of its elements an intent to obstruct justice. With this theory we cannot agree. The obstruction of justice is the evil which the statute was designed to forestall. The legislature evidently found, and this finding is one in which the courts have consistently concurred, that attempts to influence a witness to change his testimony or to absent himself from a trial or other official proceeding, necessarily have as their purpose and it is their natural tendency to obstruct justice. They are offenses against the very object and purpose for which courts are established. 58 Am. Jur. 2d *Obstructing Justice* § 8 (1971); 67 C.J.S. *Obstructing Justice* § 8 (1950). So rarely has it been suggested that the intent to obstruct justice is a separate element of the

offense of dissuading or preventing or attempting to dissuade or prevent a witness from attending or testifying that our research has revealed only one case in which such a contention was made. In that case, *State v. Biebusch,* 32 Mo. 276, 68 N.W. 1098 (1862), it was quickly rejected. The crime, the court said, consisted in the attempt and not in the intent of the attempt, and therefore it was unnecessary to allege that it was done with the intent to obstruct justice.

■ One is presumed to intend the natural and probable consequences of his acts. The intent to perform the acts proscribed by the statute, with knowledge or reason to believe that the person is or probably is about to be called as a witness, conclusively shows an intent to obstruct justice. While it may have been accompanied by some purpose deemed worthy by the actor, the intent is nevertheless manifest in the action taken.

■ The fact that no specific intent need be proved, however, does not mean that the actor's state of mind is entirely irrelevant. The accused must know that the person approached is a witness, or, as is our statute, have reason to believe that he is about to be called as such.

In *Pettibone v. United States,* 148 U.S. 197, 37 L. Ed. 419, 13 S. Ct. 542 (1893), the United States Supreme Court construed the federal statute (8 U.S.C. § 1503), which defined as separate offenses tampering with a witness and obstructing justice. It had before it a case in which a conspiracy to obstruct justice was charged. The high court said there that, with respect to a charge that an accused person influenced, intimidated or impeded a witness, it was necessary to show that he had notice that the person was such a witness. With regard to the separate offense of obstructing or impeding, or endeavoring to obstruct or impede the administration of justice, the United States Supreme Court said that it was necessary to show that the accused had knowledge or notice of the pendency of proceedings, or the progress of the administration of justice in the particular court in question.

The statute did not expressly require such knowledge or notice as an element of the offenses, but the court found that, when it was read in the light of the common law, the legislative intent to include that element could be properly inferred. The court did not, however, hold that proof of a specific intent to obstruct justice was required.

■ A statute may punish conduct alone, without making intent an element of the crime. *Smith v. California,* 361 U.S. 147, 4 L. Ed. 2d 205, 80 S. Ct. 215 (1959); *State v. Winger,* 41 Wn.2d 229, 248 P.2d 555 (1952); 22 C.J.S. *Criminal Law* § 30 (1961). As this court said in *Winger,* whether intent is an element of a statutory crime depends upon the intent of the legislature. If intent is not made an element, the doing of the prohibited act constitutes the crime.

With respect to some statutorily defined offenses, we have found an implied element of specific intent, or of guilty knowledge. Such statutes are those which punish conduct which may be innocent and is objectionable only if it is accompanied by a specific evil intent or guilty knowledge. Such a statute was under consideration in *State v. Turner,* 78 Wn.2d 276, 474 P.2d 91, 41 A.L.R.3d 493 (1970). There the legislature had made it a crime to publicly mutilate, defile, defy, trample upon or by word or act cast contempt upon any flag mentioned in the act. Finding that under the statute, as written, punishment could be imposed upon a person who damaged a flag with no improper intent (such as a person who accidentally trampled upon a flag), we held that its words implicitly required an element of intent to deface, defile, desecrate or cast contempt upon the flag.

*Seattle v. Gordon,* 54 Wn.2d 516, 342 P.2d 604 (1959), was another case of this kind. A city ordinance in that case made it unlawful for any operator of a vehicle to refuse to stop when signaled to do so by any peace officer. The ordinance required such an officer to establish his identity as

such if requested by the operator of the vehicle. The appellant, who had been found guilty of a violation of this ordinance, maintained that he had not recognized the officer as such and had feared that he was about to be subject to a criminal attack. A majority of this court agreed with his contention that the intent to resist arrest was an implied element of the crime. Resisting arrest was an offense at common law, it was said, and *scienter* was one of its elements.

Thus, an implied requirement that criminal intent be proved may be found in a statute, even though it contains no express requirement with respect to intent, upon the assumption that the legislature did not intend to enact an unjust law.

There are instances where the legislative omission of any requirement of proof of intent or knowledge is fatal to the statute. *Smith v. California, supra,* cited by the respondent, was such a case. There the California Supreme Court had construed a city ordinance making criminal a bookstore proprietor's mere possession of a book later judicially determined to be obscene. The high court held that, as thus construed, the ordinance was broad enough to punish innocent possession of such a book. Such a law, the court said, tended to discourage the selling of books other than those the bookseller has personally inspected and thus inhibited the exercise of the right of freedom of the press. At the same time, the Supreme Court recognized that, generally, states may create strict criminal liabilities by defining criminal offenses without any element of *scienter.*

■ There is no contention here that any constitutional right of the appellant is affected by the statute in question. RCW 9A.72.120 does not expressly require proof that an accused was aware that the person approached was a witness. It does provide, however, that if the person is not in fact a witness, the accused must have had "reason to believe" that he was about to be called as such. This provision reflects a legislative awareness of the necessity of showing knowledge or notice, a requirement at common

law. *See Pettibone v. United States, supra.* It is difficult to conceive of a situation in which an accused might approach a person to absent himself from proceedings or change his testimony without at the same time being aware that he was a witness or at least having reason to believe that he was about to be called as such. Such knowledge or notice can readily be inferred from the fact of the attempted inducement. Nevertheless, we think the statute can fairly be read to include them as an element of the offense.

The statute, then, implicitly if not expressly requires a showing of knowledge or notice.[1] Such a requirement is sufficient to insure that no person innocent of the intent to obstruct justice will be caught in its net.

The appellant's theory that an intent to obstruct justice must be proved as a separate element appears to be based upon the notion that a person has a right to decide for himself whether or not his action in attempting to persuade a witness to change his testimony or absent himself from a proceeding will tend to obstruct justice. No authority is advanced supporting such a proposition, and we know of no legal principle upon which it can rest. It is the court or other tribunal which has the power and duty to decide the justice of the case, and it is the purpose of this statute to assure that it will not be hindered in its processes by improper interference with witnesses who are to appear before it. Of course, an attorney may counsel a witness to exercise a privilege not to appear or testify, and the statute expressly allows this exception.

The respondent further argues that the statute can be read to cover actions which are no way culpable. It is suggested that parties to a plea bargain could fall within its coverage.

A plea bargain has been defined as the process by which the State, represented by the prosecutor, and an accused negotiate an agreement for disposition of criminal charges against the accused. *People v. Smith,* 53 Cal. App. 3d 655,

---

[1]An instruction on intent would be required in a trial.

126 Cal. Rptr. 195 (1975). It is said that it has as its ideal purpose the prevention of the necessity of trial if an alternative can result in justice to society and the accused. *State v. Jennings,* 104 Ariz. 3, 448 P.2d 59 (1968). It ordinarily contemplates that the accused will plead guilty as quid pro quo for a reduction of the charge against him. *State v. Andrews,* 282 Minn. 386, 165 N.W.2d 528 (1969).

Plea bargaining[2] consists of negotiation between the accused and the prosecutor, not negotiation with witnesses. If properly conducted, there should be no occasion to request a witness to either change his testimony or absent himself from the proceedings. Once concluded with an agreement to plead guilty to a lesser charge, there will be no trial and thus no need to call witnesses. We fail to perceive how RCW 9A.72.120 can in any way hinder legitimate plea bargaining.

It is also argued that the statute could apply to an attorney who has subpoenaed a witness and then releases him, having decided not to call him at the trial or other proceeding. An attorney can release his own witness without resorting to any of the conduct forbidden under the act. Inducement plays no part where an attorney releases his own witness. Of course, if he has reason to believe that the witness will be called by some other party or by the tribunal, a different question would be presented. His guilt or innocence would depend upon whether he merely advised the witness that he would not call him, or whether he further attempted to induce him not to appear or to testify falsely, or to withhold unprivileged testimony when called by another party or by the tribunal.

---

[2] In common parlance, "plea bargaining" is authorized by CrR 4.2(e):

(e) **Agreements.** If a plea of guilty is based upon an agreement between the defendant and the prosecuting attorney, such agreement must be made a part of the record at the time the plea is entered. No agreement shall be made which specifies what action the judge shall take on or pursuant to the plea or which attempts to control the exercise of his discretion, and the court shall so advise the defendant.

The respondent points to the fact that, prior to the enactment of the present statute, this state's tampering statutes always included as an express element the intent to obstruct justice. Recently, in upholding the constitutionality of RCW 9.69.080 against charges of vagueness and overbreadth, we found that the presence of this element alone was sufficient to forestall such constitutional objections. *State v. Hegge,* 89 Wn.2d 584, 574 P.2d 386 (1978). We here hold that, even without the inclusion of such intent as an element of the crime, the successor statute is not susceptible to such attacks.

RCW 9A.72.120 is neither vague nor overbroad. It does not on its face encompass any constitutionally protected activity. The burden of showing its invalidity has not been sustained. The lower court erred, therefore, in holding it unconstitutional.

The judgment is reversed and the cause remanded for further proceedings.

WRIGHT, C.J., and HAMILTON, STAFFORD, UTTER, BRACHTENBACH, and HOROWITZ, JJ., concur.

DOLLIVER, J. (concurring)—I concur with the majority opinion since the constitutional validity of the statute (RCW 9A.72.120) does not seem in doubt. However, I believe it is important and appropriate to comment on what is the background and the unforeseen impact of this legislation.

The majority brushes aside the contention that parties to a plea bargain could run afoul of the statute. Contrary to the majority, I believe a serious problem can arise and is illustrated by this case.

While the majority accurately recites the barebones facts of the case, there is some additional uncontroverted information which is important: (1) The affidavit of the hearing officer at the license revocation hearing states:

> That I am the Hearing Officer for the Department of Motor Vehicles and have been employed in that capacity

for many years last past. I have heard a substantial number of license revocation hearings; the administrative hearing is more popularly referred to as a "242 Hearing". It is a rarity when the State of Washington and/or the Department of Motor Vehicles is represented by legal counsel. As a normal course, the only individuals present at the administrative hearing is the accused, the accused's attorney, myself and the arresting officer. The arresting officer sits in a dual capacity, that being as the prosecuting witness and as a prosecuting attorney.

(2) The affidavit of the city prosecutor for Bellevue states:

In early, 1977, what might have been late January or early February, Mr. Stroh approached me for the purposes of compromising a charge brought by Officer Kasnick against his client, Mr. Berryman. I discussed plea bargaining with Mr. Stroh in the coffee room at Bellevue District Court. Mr. Stroh asked me if I would approach Officer Kasnick about compromising the administrative hearing to see if Officer Kasnick would be willing not to give testimony at that hearing. I told him that I did not have any influence in that area and would not approach Officer Kasnick on the subject. I told him he would have to talk to Officer Kasnick. Since I cannot remember the specifics of the actual conversation with Mr. Stroh but will not deny that I may have told him to "have at it", and that the decision lies solely with Officer Kasnick.

On or about March 3, 1977, I received a carbon copy of a letter sent to Officer Kasnick from Attorney, Hugh Stroh. I did not contact or communicate with Hugh Stroh after receiving the letter until the Petition for Deferred Prosecution of Ronald Berryman was heard in Court.

I was not aware of the existence of RCW 9A.72.120 until I was contacted regarding the investigation of Mr. Stroh.

(3) The record indicates Mr. Stroh's client had been arrested three times by the same arresting officer for driving while intoxicated. On all three occasions, including the arrest which is the subject of this case, the charges against Mr. Stroh's client were either reduced or dismissed. Indeed,

in this case the charges against Mr. Stroh's client were dismissed by the Department of Motor Vehicles' hearing officer at the license revocation hearing.

(4) The letter referred to by the Bellevue City Prosecutor, which apparently is the basis of this action by the King County Prosecutor, was received by both the arresting officer and the Bellevue prosecutor on the same day. It was not regarded as being of such impropriety or illegality that the Bellevue prosecutor felt impelled to contact or communicate with Mr. Stroh and he did not see him until the petition for deferred prosecution for Mr. Stroh's client was heard in court.

From all of the above, it can be seen that Mr. Stroh was openly and with the knowledge of the Bellevue prosecutor attempting to plea bargain with the prosecutor at the revocation hearing. Unfortunately for Mr. Stroh, the person acting as prosecuting attorney in the revocation hearing was also the only witness for the prosecution. Neither the Bellevue prosecutor nor Mr. Stroh understood the actions of Mr. Stroh or his letter to be illegally tampering with a witness.

There is a further note of chronological interest. On March 3, 1977, Mr. Stroh sent the offending letter to the arresting officer and a carbon copy was also received by the Bellevue prosecutor. On March 23, 1977, the revocation hearing was held and the charge brought by the arresting officer dismissed—the third time Mr. Stroh had prevailed over the arresting officer. On March 25, 1977, 3 weeks after the letter but only 2 days after his third defeat by Mr. Stroh, the arresting officer contacted the King County Prosecutor and alleged a violation of RCW 9A.72.120.

We have recently specifically upheld plea bargaining. *State v. Tourtellotte,* 88 Wn.2d 579, 564 P.2d 799 (1977). In this case, if the prosecuting witness and the King County Prosecuting Attorney prevail, an attempt to plea bargain will result in a felony conviction and possible disbarment. This would not only result in irreparable harm to the

defendant, but would also have a deleterious impact on the administration of justice in this state.

Since the court finds RCW 9A.72.120 not to be unconstitutional, it cannot and should not overturn the judgment of the legislature. But, as judges, we do have an obligation to bring to the attention of the legislature statutes which are harmful to the administration of justice. This is the impact of RCW 9A.72.120 as it is applied in this case.

BRACHTENBACH and HICKS, JJ., concur with DOLLIVER, J.