[No. 56161-3. En Banc. February 8, 1990.]

THE STATE OF WASHINGTON, *Respondent*, v. DALE D. REMPEL, *Petitioner*.

---

*Julie A. Kesler* of *Washington Appellate Defender Association,* for petitioner.

*Seth R. Dawson, Prosecuting Attorney,* and *Seth Aaron Fine, Deputy,* for respondent.

BRACHTENBACH, J.—There are two issues: (1) Is the evidence sufficient to support defendant's conviction of tampering with a witness, RCW 9A.72.120; and (2) should the petition for review be dismissed when defendant has served his time, his whereabouts is unknown, he has not reported to a community corrections officer after release as ordered, and a bench warrant has been issued for his arrest?

Defendant was convicted of criminal trespass, second degree attempted rape, and tampering with a witness. The Court of Appeals affirmed. *State v. Rempel,* 53 Wn. App. 799, 770 P.2d 1058 (1989). Defendant challenges only the witness tampering conviction in the petition for review. We reverse.

Before reciting the facts and reaching the merits, we consider whether to dismiss the petition for review. In its answer to the petition, the State urges that we not consider this matter on the grounds that the defendant has waived his right to review by his disappearance and by being subject to an unexecuted bench warrant for arrest.

It has long been the rule that when a defendant flees the jurisdiction pending appeal he thereby waives his right to prosecute the appeal, unless within a time fixed he surrenders himself into custody of the proper officer or gives bail for his appearance. *State v. Handy,* 27 Wash. 469, 67 P. 1094 (1902). In *State v. Mosley,* 84 Wn.2d 608, 610, 528 P.2d 986 (1974), we explained that if the conviction is affirmed, defendant is unlikely to appear to submit to his sentence. If a new trial is ordered, defendant may or may not choose to appear.

In *Mosley,* the argument was made that the general rule might be subject to modification if the challenge were to the sufficiency of the evidence thereby obviating the necessity of a new trial. The facts in *Mosley* did not require resolution of the issue. The facts in this case, however, raise the issue. We conclude that we will consider whether the defendant's challenge is to the sufficiency of the evidence in deciding whether to exercise our discretion to review a case despite the defendant's having fled the jurisdiction.

We decline, however, to adopt a blanket rule which would entitle a defendant who has fled the jurisdiction to pursue an appeal in all cases where the sufficiency of the evidence is challenged. Rather we will exercise discretion on a case to case basis while strongly affirming the general rule. *State v. Koloske,* 100 Wn.2d 889, 676 P.2d 456 (1984); *State v. Johnson,* 105 Wn.2d 92, 711 P.2d 1017 (1986); *State v. Ortiz,* 113 Wn.2d 32, 33, 774 P.2d 1229 (1989).

We will review the substantive issue in this case. We note that because the challenge is to the sufficiency of the evidence, our decision will not require retrial. Moreover, our decision will not affect whether defendant chooses to submit to proper authority. Defendant has served his time on three convictions, two of which he does not now challenge. The sentences on the three charges were concurrent. According to the record, the sole basis for issuance of the bench warrant was defendant's failure to report as ordered to his assigned community corrections officer after release from custody.

We have recognized a second reason underlying the general rule: a defendant who has fled the jurisdiction should not be entitled to review, having scorned the court's authority over him. *Ortiz,* at 34. Despite our disapproval of defendant's failure to report, however, our fundamental disagreement with the Court of Appeals' analysis, discussed hereafter, warrants our review.

Turning to the facts in this case, defendant and Diane DuBois had been friends for some years; they had been intimate once early in their acquaintanceship. In December

1986, defendant stayed at DuBois's apartment while she was out of town. Upon her return, defendant stayed on. Defendant resisted DuBois's attempts to have him move out. Defendant testified that he wanted to marry her and that they had a sexual relationship throughout his stay; DuBois denied this. On the night of February 18, 1987, the events occurred which led to defendant's convictions; defendant and DuBois offered different versions of the events, but the jury believed that defendant attempted to rape DuBois. The police were called; defendant and DuBois were struggling when the police arrived. Defendant was arrested.

That same evening defendant called DuBois from jail. DuBois accepted the collect call, but hung up without talking to defendant.

Over the next 4 days, defendant called DuBois many times, but she accepted only two or three of the collect calls. Those two or three telephone calls constitute all the evidence about tampering with the potential witness, DuBois.

*All* of the relevant testimony from the State's case on the tampering charge is as follows:

Q. When he called, say, the first time after that night, the first time, do you remember anything that he said?
A. Yeah.
Q. Tell me.
A. I—that he was sorry.
Q. Excuse me?
A. That he was sorry.
Q. Anything else?
A. That he'd never do it again, that it was going to ruin his life. I don't know.
Q. Did he ask you to do anything for him?
A. Yes, he asked me to drop the charges.
Q. What was your response to that?
A. I told him I didn't have any control over it, you know, at that—you know, as far as I knew that the policemen had already filed their report. They had taken him to jail, that there wasn't anything I could do about the whole thing.
Q. Were you willing to do that if you could?
A. No.
Q. Why not?

A. Because he was wrong. He did something wrong.

. . . .

Q. How many times do you think you actually talked to him?

A. I don't know. Maybe two, three times maybe.

Q. Was there—How about any of the other phone calls other than that first one, do you remember anything else that was said?

A. It was—it's pretty much the same things each time that I did talk to him. I told him—it was pretty much the same things every time.

Q. Which is—

A. That he was sorry, you know, "Don't ruin my life," you know, "I didn't mean it." That kind of thing.

Q. Did getting those phone calls concern you?

A. He was in jail so it didn't really, you know. I didn't worry about those, no, I mean other than the fact that he was a real nuisance.

Q. Did he ask you again after that first phone call to drop charges?

A. Yes.

Verbatim Report of Proceedings, at 79–80.

Q. And the content of those conversations when you talked to him were basically the same thing over and over again, that he was sorry, that this was going to ruin his life, that he didn't mean it, those kinds of things?

A. Right.

Q. Okay. Any you weren't worried about the calls except that they were a nuisance?

A. Right.

Q. And they weren't going to affect in any way what you were going to do?

A. (Witness shaking head.)

Verbatim Report of Proceedings, at 97–98.

Defendant's version of the phone calls was that he asked DuBois why she was "charging me with what she was charging me" because "I hadn't done it." Defendant said he never threatened her or asked her to withhold testimony. Verbatim Report of Proceedings, at 174–75.

■ Defendant's challenge is to the sufficiency of the evidence. The standard of review is whether, after viewing the evidence in a light most favorable to the State, any rational trier of fact could have found the essential elements of the charged crime beyond a reasonable doubt. *State v. Green,* 94 Wn.2d 216, 221, 616 P.2d 628 (1980)

(citing *Jackson v. Virginia,* 443 U.S. 307, 319, 61 L. Ed. 2d 560, 99 S. Ct. 2781 (1979)); *accord, e.g., State v. Aver,* 109 Wn.2d 303, 310–11, 745 P.2d 479 (1987); *State v. Guloy,* 104 Wn.2d 412, 417, 705 P.2d 1182 (1985), *cert. denied,* 475 U.S. 1020 (1986).

For our purposes the essential elements of the crime are that defendant attempted to induce a witness to withhold any testimony. The entire statute is set out in the foot-note,[1] but defendant was charged with, and the jury instructed on, the indicated elements. We conclude that the evidence and reasonable inferences do not meet the test that any rational trier of fact could have found beyond a reasonable doubt that defendant attempted to induce DuBois to withhold testimony.

The sum of the defendant's attempts are an apology, a statement that "it" was going to ruin his life, and a request that DuBois "drop the charges." The literal words do not contain a request to withhold testimony. The defendant's words contain no express threat nor any promise of reward. The words "drop the charges" reflect a lay person's percep-tion that the complaining witness can cause a prosecution to be discontinued. Defendant maintained this belief even after DuBois told him that she did not have any control over the matter. ("They had taken him to jail, that there wasn't anything I could do about the whole thing." Verba-tim Report of Proceedings, at 79–80.)

However, an attempt to induce a witness to withhold testimony does not depend only upon the literal meaning of the words used. The State is entitled to rely on the infer-ential meaning of the words and the context in which they

---

[1] "Tampering with a witness. (1) A person is guilty of tampering with a witness if he attempts to induce a witness or person he has reason to believe is about to be called as a witness in any official proceeding or a person whom he had reason to believe may have information relevant to a criminal investigation to:

"(a) Testify falsely or, without right or privilege to do so, to withhold any testimony; or

"(b) Absent himself from such proceedings.

"(2) Tampering with a witness is a class C felony." RCW 9A.72.120.

were used. *State v. Scherck,* 9 Wn. App. 792, 514 P.2d 1393 (1973). Here the State urges us to consider the underlying assaultive nature of the crime. We do so, but we consider the entire context in which the words were used, which also includes the prior relationship between defendant and DuBois, and her reaction to the phone calls. The entire context negates any inference that the request to "drop the charge" was in fact an inducement to withhold testimony from a later trial. DuBois testified that the calls did not concern her, that she did not worry about them "other than the fact that he was a real nuisance." Verbatim Report of Proceedings, at 80, 97–98.

Of course, the effect of the inducement attempt upon the potential witness is not dispositive. One can be guilty of an *attempt* to induce a witness regardless of the effect upon the witness. However, the witness' reaction here is relevant because it tends to disprove the State's claim that the context of the words spoken shows an attempt to induce DuBois to withhold testimony.

■ We do not hold that the words "drop the charges" cannot sustain a conviction if uttered in a factual context which would lead to a reasonable inference that the speaker actually attempted to induce a witness to withhold testimony. Given the context here, however, we conclude that no such inference can be drawn. The evidence does not support the conviction.

Earlier cases are factually distinguishable. In *State v. Stroh,* 91 Wn.2d 580, 588 P.2d 1182, 8 A.L.R.4th 760 (1979), the defendant asked the witness to not appear or alternatively change his testimony. In *State v. Wingard,* 92 Wash. 219, 158 P. 725 (1916), the defendant promised a reward, made a threat, and urged the witnesses to ignore a subpoena. The facts also distinguish *State v. Scherck, supra,* where the defendant asked the witness to drop the charges, urged him to refuse to appear, and made a threat. No similar facts or reasonable inferences appear here.

Finally, we explain our fundamental disagreement with the Court of Appeals' decision. That court misinterpreted the defendant's argument when it proceeded on the premise that "[t]he crux of the appellant's argument, without stating in so many words, is that he did not *intend* to 'tamper' with the witness's testimony, or obstruct justice in any way". *State v. Rempel, supra* at 805. The Court of Appeals then focused solely on *intent,* correctly noting that specific intent to obstruct justice need not be proved, as held in *State v. Stroh, supra* at 582.

The Court of Appeals' characterization of defendant's argument as involving intent caused it to focus on the wrong issue. The appellant's brief specifically stated the issue to be: "Was the evidence insufficient to support a finding that appellant was guilty [of tampering with a witness]?" Brief of Appellant, at 1. In addition, appellant's argument thereon was entitled: "The Evidence Was Insufficient to Support a Guilty Verdict on Count III [tampering]." Brief of Appellant, at 14. Appellant's argument never touched upon intent, rather it was addressed solely to the sufficiency of the evidence. Brief of Appellant, at 14–16. The Court of Appeals never reached the issue raised, except to conclude that "appellant made a menace of himself by repeatedly telephoning her. He admitted that he tried to get her to have the charges dropped. These actions, in and of themselves, constitute the crime of tampering with a witness." *State v. Rempel, supra* at 805. It is obvious that this conclusion does not follow from an examination of the sufficiency of the evidence; as analyzed above we disagree with the ultimate conclusion of the Court of Appeals.

The conviction for tampering with a witness is reversed. Defendant's counsel concedes that this reversal does not affect defendant's financial obligation for victim's compensation under the otherwise valid judgment and sentence nor his duty to report to his community corrections officer. This

decision has no effect upon the outstanding bench warrant for defendant's arrest.[2]

CALLOW, C.J., UTTER, DOLLIVER, DORE, and SMITH, JJ., and WIELAND, J. Pro Tem., concur.

ANDERSEN, J. (concurring)—As to the witness tampering issue, I concur with the majority's reasoning and conclusion. I write separately, however, to emphasize the aversion the law has, and should continue to have, to entertaining an appeal or petition by a criminal defendant who has flaunted the authority of a court's judgment or order and fled its jurisdiction, as well as to express disagreement with the rationale of the majority in deciding to consider the merits of the petition before us.

As the majority recognizes, our law is well settled that a defendant who flees the jurisdiction of our courts thereby waives the right to petition or appeal.[3] Accordingly, we have consistently refused to review the conviction of one who has fled.[4] As United States Supreme Court Justice Frankfurter observed some decades ago: "If legal questions brought by a litigant are to remain [in an appeals court], the litigant must stay with them. When he withdraws himself from the power of the Court to enforce its judgment, he

---

[2]Subsequent to oral argument the State supplemented the record showing an order, signed on October 2, 1989, establishing the amount of restitution as $347.20 to be paid as set by the probation officer. As noted this decision does not affect that obligation nor defendant's duty to report to the probation officer, the latter duty being the sole ground for issuance of the still valid bench warrant.

[3]*State v. Mosley,* 84 Wn.2d 608, 528 P.2d 986 (1974); *State v. Handy,* 27 Wash. 469, 67 P. 1094 (1902).

[4]*State v. Johnson,* 105 Wn.2d 92, 711 P.2d 1017 (1986) (appeal dismissed for failure to appear for probation revocation hearing); *State v. Nason,* 20 Wn. App. 433, 579 P.2d 366 (1978) (court dismissed appeal when defendant was still at large at the end of a court ordered grace period); *State v. Beck,* 23 Wn. App. 640, 598 P.2d 400 (1979) (appeal dismissed upon escape of defendant and reinstatement refused upon his return to custody).

also withdraws the questions which he had submitted to the Court's adjudication." *State v. Johnson,* 105 Wn.2d 92, 97, 711 P.2d 1017 (1986) (quoting *Eisler v. United States,* 338 U.S. 189, 192, 93 L. Ed. 1897, 69 S. Ct. 1453 (1949) (Frankfurter, J., dissenting)).

The United States Supreme Court long ago recognized that one who flees the jurisdiction of the court abandons his or her right to prosecute an appeal, since no court is bound to submit to the contempt of its authority. *Allen v. Georgia,* 166 U.S. 138, 141, 41 L. Ed. 949, 17 S. Ct. 525 (1897). I entirely concur with the principle that one who has scorned the authority of our legal system shall be deemed to have waived any pending appeal. The petitioner in this case was convicted of attempted rape, then defied a court order to make restitution to his victim. Such egregious conduct is a serious defiance of the court's order. I see no reason in law or equity why limited judicial resources should be expended to complete the petition or appeal of litigants who have defied a court's order and absented themselves from the court's authority.

The majority opinion would create a case by case exception to the general view and permit a "sufficiency of the evidence" review. The majority offers no justification for such an exception and I do not perceive it to be either necessary or wise judicial policy.

I do, however, share the majority's concern lest the Court of Appeals published decision misconstruing the witness tampering statute impart confusion to the bench and bar in future cases. It is not to this petitioner, however, but to the integrity and light of the common law that we owe a duty to review an erroneous decision. I do not subscribe to the majority's notion of a case by case sufficiency of the evidence exception to the above principles. It is only on the specific and limited basis stated, then, that I concur with the majority's decision to reach the merits of this particular petition.

In sum, I concur in the decision to review this case but do so on a different basis than the majority. I fully concur, however, in the holding and rationale of that portion of the majority opinion which corrects the interpretation of the witness tampering law.

DURHAM, J., concurs with ANDERSEN, J.