[No. 25477-4-I. Division One. August 10, 1992.]

THE STATE OF WASHINGTON, *Respondent,* v. REGINALD JAMES SANDERS, *Appellant.*

*Anna-Mari Sarkanen* of *Washington Appellate Defender Association,* for appellant.

*Norm Maleng, Prosecuting Attorney,* and *Carol Spoor, Deputy,* for respondent.

BAKER, J. — Reginald J. Sanders appeals his convictions of three counts of first degree statutory rape and two counts of tampering with a witness. He raises issues pertaining to spousal testimonial privilege, severance, certain instructions relating to the witness tampering charges, and sufficiency of the evidence. We affirm.

## FACTS

Sanders was charged with three counts of first degree statutory rape of his stepdaughter, A. Additional fourth and fifth counts charged Sanders with an "attempt to induce [A. and Elizabeth Sanders], a witness in an official proceeding, to absent herself from such proceedings", that is, from trial on the rape counts. The witness tampering counts were alleged to have occurred between April 1, 1988, and March 15, 1989.

Elizabeth Sanders is defendant's wife and A.'s mother. She was charged as a codefendant with a similar count of witness tampering as to A., and pleaded guilty before the defendant's trial began.

When the defendant moved pretrial to sever the rape counts from the witness tampering counts, the State indicated it did not intend to call Elizabeth Sanders as a witness. This circumstance was considered by the court in its denial of the motion to sever.

The defendant was arrested on the rape charges and booked into jail on April 1, 1988. He remained in custody essentially continuously until his release on May 3, 1988. A series of collect calls was made from a jail telephone to the family's apartment during April and May 1988.[1] A. testified that she would sometimes answer the telephone during this

---

[1] The record alludes to 132 phone calls from the jail to the apartment, although the exhibits demonstrating this number of calls were not made a part of the record on appeal. A "no contact" order between the defendant and his children had been entered in a concurrently filed dependency action during this period.

period and refuse collect calls from the defendant. Her mother, however, accepted calls from him.[2]

After he was released from jail but before the trial was set, he visited the family on Friday evenings. One day in May 1988 the defendant "[came] in the house with a big paycheck" and said that "we were going to go to California" to stay with relatives for the summer. School had not yet ended for the year. The next day the defendant saw the family off as they boarded a bus for Palm Springs, California.

Between then and February 1989, the family lived in various locations in California, staying at times with relatives of the defendant. The defendant visited them between three and five times and called frequently. None of the children attended school during this period. A. testified her mother did not work out of the home and obtained funds by going to a bank and withdrawing cash by means of an automatic teller.

A police detective testified that trial on the rape counts had been scheduled for June 22, 1988. However, that trial never occurred; the case was dismissed without prejudice the day before trial due to the detective's inability to locate the victim and her family after they left Seattle. The detective eventually located the family in California in March 1989, whereupon the rape charges were forwarded to the prosecutor for refiling.

In the middle of the State's case, Elizabeth Sanders was interviewed for the first time by counsel for the State and the defense. She had been unavailable as a witness during the period she was a codefendant. The State decided to call her to testify in the defendant's trial. Sanders argued that would be a violation of the spousal testimonial privilege and renewed his motion to sever, which was again denied.

Elizabeth Sanders testified that after her husband's arrest and the issuance of the no contact order, she accepted calls from him and visited him in jail. She asked him if he had

---

[2]The record is unclear as to whether the "no contact" order applied to Elizabeth Sanders as well.

hurt her daughter, and he denied it, instructing her to "tell [A.] to stop saying that". She discussed the upcoming trial with him. She knew A. would need to testify at trial, and that she might also be called. Nonetheless, she decided to leave the state in May 1988 with her three children. She testified that the idea to do so was originally her husband's. She testified, "He just said that we should leave, they would never find us."

At the bus station, the defendant gave her money to pay for the bus tickets, and some extra money. He did not threaten her or A. in order to induce them to leave the state. He assisted in the financial support of the family while they were in California by opening a bank account for Elizabeth and cosigning the lease on an apartment.

The leasing agent for the apartment testified that the defendant and his wife cosigned a 6-month lease commencing November 1988, and it was her belief that both parents and the three children were living there, except that the husband frequently traveled out of town on business.

Following the State's case, the defense moved to dismiss the witness tampering counts on the basis of insufficient evidence. Extensive argument ensued regarding the meaning of the statutory terms "witness" and "official proceeding". The trial court denied the motion. The motion was unsuccessfully renewed following the defendant's case in chief.

The defendant was found guilty on all counts. He subsequently moved for arrest of judgment or in the alternative a new trial, alleging for the first time that the information was constitutionally defective. It omitted the language in the witness tampering statute relating to an attempt to induce "a person whom he has reason to believe may have information relevant to a criminal investigation" to absent himself or herself "from such proceedings." RCW 9A.72.120(1). He also raised arguments relating to the spousal testimonial privilege.

The court denied the motion, holding that the information was not constitutionally defective and that Elizabeth Sanders had been properly allowed to testify.

TESTIMONIAL INCOMPETENCE AND
PRIVILEGED COMMUNICATIONS

RCW 5.60.060(1) provides:

> A husband shall not be examined for or against his wife, without the consent of the wife, nor a wife for or against her husband without the consent of the husband; nor can either during marriage or afterward, be without the consent of the other, examined as to any communication made by one to the other during marriage. But this exception shall not apply . . . to a criminal action or proceeding for a crime committed by one against the other, . . . nor to a criminal action or proceeding for a crime committed by said husband or wife against any child of whom said husband or wife is the parent or guardian[.]

The statute is designed to encourage marital harmony. 5A K. Tegland, Wash. Prac., *Evidence* § 210, at 125 (3d ed. 1989). It establishes both the incompetence of a spouse of a party to testify and a privilege for confidential communications between spouses, subject to certain restrictions. Both are applicable here, since Elizabeth testified about the defendant's acts in purchasing the bus tickets, providing her with funds, and cosigning the lease on the California apartment, in addition to statements defendant made in conversations with her.

██ Testimonial privileges are creatures of statute, and should therefore be strictly construed. *State v. Wood*, 52 Wn. App. 159, 163, 758 P.2d 530 (1988). In *State v. Maxon*, 110 Wn.2d 564, 576, 756 P.2d 1297 (1988), for example, our Supreme Court recognized that concern over the loss of valuable evidence and the suppression of truth that may result from testimonial privileges sometimes outweighs the policies underlying the creation of the privilege. In considering a parent-child testimonial privilege, the *Maxon* court stated:

> We agree with the United States Supreme Court that excluding relevant evidence by creating a privilege is warranted only if the resulting public good transcends the normally predominant principle of using all rational means for ascertaining the truth.

*Maxon*, 110 Wn.2d at 576 (citing *Trammel v. United States*, 445 U.S. 40, 50, 63 L. Ed. 2d 186, 100 S. Ct. 906 (1980)).

█ Criminal attempts to influence a witness to absent herself from a trial necessarily have obstruction of justice as a purpose. *State v. Stroh*, 91 Wn.2d 580, 582, 588 P.2d 1182, 8 A.L.R.4th 760 (1979). Witness tampering is an offense against the very object and purpose for which the courts are established. *Stroh*, 91 Wn.2d at 582. There is a direct, elemental nexus between the act of tampering and the underlying crime.

That underlying crime here involves sexual abuse of a child. There is a strong public policy of insuring effective prosecutions for such crimes. For instance, the statutory spousal testimonial privilege cannot be asserted in a prosecution for physical or sexual abuse of a child. RCW 5.60-.060(1); *Wood*, 52 Wn. App. at 164. The Legislature's purpose was to facilitate disclosure in child abuse cases, so that offenders would be prosecuted and children protected from further mistreatment. *State v. Lounsbery*, 74 Wn.2d 659, 663, 445 P.2d 1017 (1968); *State v. Bouchard*, 31 Wn. App. 381, 387, 639 P.2d 761, *review denied*, 97 Wn.2d 1021 (1982); *see also State v. Fagalde*, 85 Wn.2d 730, 737, 539 P.2d 86 (1975) (same policy in context of psychologist-patient privilege).

Witness tampering in this case was accomplished specifically for the purpose of frustrating effective prosecution of a child sexual abuse case. We therefore conclude that neither the spousal testimonial nor the marital communications privilege applies in this case. The trial court did not err in allowing Elizabeth Sanders to testify.

## SEVERANCE

Sanders next asserts it was error to fail to sever the witness tampering counts from the statutory rape counts.

██ A motion to sever joint offenses shall be granted whenever the trial court determines that severance would "promote a fair determination of the defendant's guilt or innocence of each offense." CrR 4.4(b). If counts are otherwise properly joined, a refusal to sever will be reversed only for a manifest abuse of discretion. *State v. Bythrow*, 114

Wn.2d 713, 717, 790 P.2d 154 (1990). A defendant seeking severance has the burden of demonstrating prejudice that outweighs concern for judicial economy. *Bythrow*, 114 Wn.2d at 718.

Prejudice may result if a defendant is embarrassed in the presentation of separate defenses, or if joinder of the multiple counts in a single trial invites the jury to cumulate evidence to find guilt or infer a criminal disposition. *State v. Watkins*, 53 Wn. App. 264, 268, 766 P.2d 484 (1989). Factors which may offset or neutralize the prejudicial effect of joinder include (1) the strength of the State's evidence on each count, (2) the clarity of defenses to each count, (3) whether the court properly instructs the jury to consider the evidence of each crime separately, and (4) the admissibility of the evidence of one crime in the trial of the other if they had been tried separately. *State v. Eastabrook*, 58 Wn. App. 805, 811-12, 795 P.2d 151 (citing *State v. Smith*, 74 Wn.2d 744, 755, 446 P.2d 571 (1968), *vacated in part*, 408 U.S. 934, 33 L. Ed. 2d 747, 92 S. Ct. 2852 (1972), *overruled on other grounds in State v. Gosby*, 85 Wn.2d 758, 539 P.2d 680 (1975)), *review denied*, 115 Wn.2d 1031 (1990). As to the last factor, however, even if evidence of separate counts would not be cross admissible, severance is not necessarily required. *State v. Markle*, 118 Wn.2d 424, 439, 823 P.2d 1101 (1992); *Bythrow*, 114 Wn.2d at 720-22.

Here, the State's case was fairly strong on all counts. Furthermore, Sanders was not embarrassed in presenting separate defenses; his defense to all counts was denial of any culpability. The jury was properly instructed to consider each count separately.

Regarding the cross admissibility of the evidence, the fact of the rape charge would be relevant in a separate trial on the witness tampering to show why the tampering occurred.

To analyze the admissibility of the tampering facts in a separate trial on the rape charge, we analogize to the cases holding that evidence of flight and concealment is admissible as circumstantial evidence of guilt. *See, e.g., State v. Etheridge*, 74 Wn.2d 102, 113, 443 P.2d 536 (1968); *State v.*

*Cobb*, 22 Wn. App. 221, 224, 589 P.2d 297 (1978), *review denied*, 92 Wn.2d 1011 (1979). "A decision to avoid trial, although not an impulsive reaction, is nevertheless a circumstance which, if unexplained, might reasonably be considered to be the act of one who is conscious of his guilt." *State v. Jefferson*, 11 Wn. App. 566, 570, 524 P.2d 248 (1974), *quoted in Cobb*, 22 Wn. App. at 225.

Similarly here, evidence of Sanders' attempt to induce the key complaining witness and her mother to absent themselves from the jurisdiction demonstrates a motive or intent to avoid trial on the rape charges which, if unexplained, is a circumstance which can reasonably be considered to be consistent with guilty knowledge. Thus, the facts pertaining to the witness tampering would be relevant and admissible in a trial on the rape charges. ER 404(b).

The defendant acknowledges that evidence of witness tampering strongly tends to show a consciousness of guilt with regard to the rape charges. Indeed, he argues that the inference is so strong that the prejudicial impact of the evidence should have outweighed concerns for judicial economy served by the joinder of the charges.

We disagree. As we have already concluded, this evidence would have been admissible in a trial on the rape charges even if severance had been granted. We hold that the trial court did not abuse its discretion in denying the motion to sever.

INSTRUCTIONS

The jury was instructed as follows:

INSTRUCTION NO. 15

A person is guilty of Tampering with a Witness if he attempts to induce a witness or person he has reason to believe is about to be called as a witness in any official proceeding or a person whom he has reason to believe may have information relevant to a criminal investigation to absent herself from such proceedings.

The defendant did not except to this instruction below.

The jury was further instructed:

INSTRUCTION NO. 16

To convict the defendant . . . of the crime of Tampering with a Witness, as charged in Count IV, each of the following elements of the crime must be proved beyond a reasonable doubt:

(1) That on or about the time intervening between April 1, 1988 and March 15, 1989, the defendant attempted to induce a witness or person he had reason to believe was about to be called as a witness in any official proceeding or a person whom he had reason to believe may have had information relevant to a criminal investigation to absent herself from such proceedings; and

(2) That the defendant's acts occurred in King County, Washington.

In instruction 17, the jury was similarly instructed with regard to count 5, the other witness tampering count. The defense excepted to instructions 16 and 17 as follows:

MR. SELL: . . . Because it creates — In my mind, it is extremely broad and vague and could result in a denial of due process if the jury was to consider any act that Mr. Sanders engaged in between April 1st, 1988 and March 15, 1989, which related in any manner to the criminal investigation in this case.

The defendant further excepted to the court's failure to give the following proposed "to convict" instruction:

To convict the defendant . . . of the crime of tampering with a witness . . . each of the following elements must be proved beyond a reasonable doubt: (1) That during the time intervening between April 1, 1988 and March 15, 1989, the defendant attempted to induce Elizabeth Sanders to absent herself from an official proceeding;

(2) That the defendant had reason to believe that Elizabeth Sanders was about to be called as a witness in an official proceeding;

(3) That the defendant's acts occurred in King County, Washington.

A substantially similar instruction was unsuccessfully proposed by the defense on the additional witness tampering charge.

Sanders first argues that the trial court's definitional instruction of witness tampering, instruction 15, and the "to convict" instructions, instructions 16 and 17, which followed the language of RCW 9A.72.120(1), erroneously permitted the jury to convict him of a crime that was not charged. He points out that the instructions referred to the three classes of persons with whom it is illegal to tamper: (1) a witness; (2) a person the defendant believes is about to be called as a

witness in an official proceeding; and (3) a person the defendant believes may have information relevant to a criminal investigation, whereas the information referred *only* to an attempt to induce "a witness in any official proceeding".

■ The defendant failed to take exception to instruction 15, and his exceptions to instructions 16 and 17 were not specific enough to preserve this assignment of error on appeal. Objections to the giving of an instruction or the refusal to give a requested instruction must be timely and specifically made to the trial court. *Reed v. Pennwalt Corp.*, 93 Wn.2d 5, 6, 604 P.2d 164 (1979). We therefore decline to consider this assignment of error.[3]

Sanders raises another instructional error issue pertaining to instructions 16 and 17 which we will address, since it was properly raised below. He argues that the instructions allowed the jury to convict on the basis of conduct occurring during the investigatory period after the June 21, 1988, dismissal of the statutory rape charges, when no "official proceeding" was pending.

■ We agree that if evidence had allowed the jury to convict *solely* on the basis of acts committed after the rape charges were dismissed, instructions 16 and 17 would have been improper. It is correct that the instructions permitted the jury to consider acts committed both before and after the rape charges were dismissed. However, this case does not involve a series of discrete acts which could have been separately charged. Rather, the defendant was charged with a criminal course of conduct properly alleged to have *begun* in April 1988 at the time his wife and stepchild *were* witnesses in an "official proceeding". The motive of the defendant was to thwart that proceeding. We are unwilling to allow his criminal conduct to inure to his benefit simply because he

---

[3]The defendant has failed to argue on appeal that this alleged error is constitutional and thus may be reviewable absent an adequate exception below pursuant to RAP 2.5(a). Even if we were to consider the error, however, we would find it harmless beyond a reasonable doubt on the grounds discussed *infra* that the persons alleged to have been tampered with were witnesses in an official proceeding at the time his criminal course of conduct began in April 1988.

succeeded in getting the case against him dismissed. Evidence of his subsequent, continuing conduct was merely corroborative of his criminal intent to cause the witnesses to be unavailable for the originally scheduled "official proceeding". That evidence provided no substantially different or independent basis for a verdict of guilty on the witness tampering charge.

The defendant's citation to *State v. Pella*, 25 Wn. App. 795, 612 P.2d 8 (1980) is unavailing. *Pella* dealt with threats made *prior* to the filing of charges, when no "official proceeding" was pending. Under the statute as it then existed, the tampering must have occurred while an official proceeding was pending. Thus, this court reversed a conviction for intimidating a witness.[4] Here, on the other hand, the defendant's criminal conduct was properly alleged to have begun *after* the rape charges were filed, when his wife and stepchild were witnesses in an "official proceeding".

It would have been preferable for the language in the State's charging document and in the instructions to have been parallel, and for the charging period to have been limited to the period prior to dismissal. Nonetheless, we conclude that the jury did not convict on an improper basis.

### SUFFICIENCY OF EVIDENCE

The defendant asserts that the record is devoid of evidence that he personally attempted to induce A. to absent herself from the trial proceedings.

■ The standard of review on a challenge to the sufficiency of evidence is whether, after viewing the evidence in a light most favorable to the State, any rational trier of fact could have found the essential elements of the charged crime beyond a reasonable doubt. *State v. Rempel*, 114 Wn.2d 77, 82, 785 P.2d 1134 (1990).

The defendant's admonishing Elizabeth to tell A. to "stop saying that", followed by his arriving at the house with a

---

[4]The Legislature subsequently amended the tampering statute to include persons a defendant believes "may have information relevant to a criminal investigation". Laws of 1982, 1st Ex. Sess., ch. 47, § 19, p. 1329.

"big paycheck", announcing in A.'s presence that the family would go to California the next day (before the school year was completed), and purchasing a bus ticket for A. as well as for the other family members is sufficient evidence of personal contact with A. during which he induced this 9-year-old girl to leave the jurisdiction.

This case is distinguishable from *Rempel*, which also involved a challenge to the sufficiency of the evidence on a tampering charge. In *Rempel*, the court held that evidence of several telephone discussions between a defendant and the complaining witness in which he apologized, claimed that "it" was going to ruin his life, and requested that she "drop the charges" was not sufficient to sustain the tampering charge, given the context of their conversation as one between two adults with a longstanding relationship, and given the fact there was no specific request to withhold testimony. The complaining witness testified that the calls did not distress her, but were merely a nuisance. *Rempel*, 114 Wn.2d at 84.

By contrast, causing a 9-year-old child to be removed from her home and personally ordering and arranging for her entire family's transport out of the state to a series of temporary, nomadic stays with relatives during which the child's schooling was disrupted for 2 consecutive years was clearly more than a nuisance in her life. The child had no choice but to leave as Sanders announced that she and her family would do. The evidence is sufficient when considered in a light most favorable to the State for the jury to have concluded that the defendant successfully induced A. to absent herself from the criminal proceedings that were pending against him.

Affirmed.

GROSSE, C.J., and COLEMAN, J., concur.

Review denied at 120 Wn.2d 1027 (1993).