FILED
MAY 21, 2015
In the Office of the Clerk of Court
WA State Court of Appeals, Division III

IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON
DIVISION THREE

| | | |
|---|---|---|
| STATE OF WASHINGTON, | ) | No. 32566-1-III |
| | ) | |
| Respondent, | ) | |
| | ) | |
| v. | ) | UNPUBLISHED OPINION |
| | ) | |
| DAVID LYLE GILMAN, | ) | |
| | ) | |
| Appellant. | ) | |

KORSMO, J. — David Lyle Gilman asked Frankie Larioz to appear at a court hearing and lie on his behalf. Mr. Larioz refused to do so. A jury subsequently found Mr. Gilman guilty of tampering with a witness. RCW 9A.72.120. He appeals, contending the evidence was insufficient to support the conviction because the State failed to prove the essential element that Mr. Gilman had reason to believe that Mr. Larioz would be called as a witness in an official proceeding. We find the evidence sufficient to support a finding of guilt and affirm.

FACTS

Moses Lake Police Officers Kohl St. Peter and Scott Ent responded to a report of a possible assault at the apartment of Rachelle Thomas on November 26, 2013. They

entered the home and saw Ms. Thomas, two children, and a man who identified himself as David Gilman. A few days later, while reviewing police reports filed by the two officers, Moses Lake Police Sergeant Mike Williams, who had been investigating Mr. Gilman on an unrelated case, noticed Mr. Gilman's name in the police reports. After additional investigation, Sergeant Williams discovered a pretrial release order prohibiting Mr. Gilman from having contact with Ms. Thomas or her daughter. The State subsequently asked the trial court to reconsider Mr. Gilman's conditions of release.

On January 22, 2014, the court held a hearing to determine whether Mr. Gilman had violated the terms of his conditional release. Ms. Thomas testified that Mr. Gilman was not in her apartment on November 26, 2013, but rather a man she identified as "Frankie Lazar." Report of Proceedings (RP) at 108. The next day, Sergeant Williams and Officer Ent contacted Mr. Larioz. Sergeant Williams photographed the contents of Facebook instant messages between Mr. Larioz and Mr. Gilman.

The State charged Mr. Gilman with one count of witness tampering. At trial, officers Ent and St. Peter identified Mr. Gilman as the person they saw in Ms. Thomas' apartment in November 2013. Mr. Larioz testified that Mr. Gilman repeatedly approached him and asked him to stand in front of a judge and testify that he, not Mr. Gilman, was Ms. Thomas' November visitor. He stated that on one such occasion, Ms.

2

Thomas joined Mr. Gilman and that they asked him "to stand in front of the judge and say something where I was when I wasn't. And I told them that I had just got out of prison, that I'm not willing to go back and lie in front of a judge for your faults." RP at 186.

Mr. Larioz also identified the contents of images on his phone as communications between himself and Mr. Gilman. The photographs show that on January 18, 2014, Mr. Gilman asked Mr. Larioz to testify on his behalf, to which Mr. Larioz responded:

> Look dude you told the police officer your first and last name I don't feel like lying to a judge when he asked me that question why did you tell the police officer your name is David Gilman you know what I mean I can get charged for lying to a judge and I'm not trying to do that.

Exhibit 2 at 33-34.

Mr. Larioz also testified that after being informed that police had been to Mr. Larioz's house, Mr. Gilman deleted Mr. Larioz from his Facebook account.

After the State rested its case-in-chief, Mr. Gilman moved to dismiss for insufficiency of the evidence. Specifically, he argued that he had not tampered with a witness as contemplated by RCW 9A.72.120 because Mr. Larioz had not been subpoenaed by the State or been named in a witness list. He also argued that although he asked Mr. Larioz to testify for him, he never expected him to do so because Mr. Larioz had consistently refused to lie in court for him.

The court denied the motion. The jury found Mr. Gilman guilty as charged.

3

ANALYSIS

Mr. Gilman challenges his witness tampering conviction, contending the State failed to present evidence that he had reason to believe the State would call Mr. Larioz as a witness. In support of his position, he points to the State's failure to subpoena Mr. Larioz and Mr. Larioz's emphatic rejection of Mr. Gilman's request to testify falsely on his behalf.

The Fourteenth Amendment Due Process Clause requires the State to prove all essential elements of a charged crime beyond a reasonable doubt. U.S. CONST. amend. XIV, § 1; *In re Winship*, 397 U.S. 358, 364, 90 S. Ct. 1068, 25 L. Ed. 2d 368 (1970). Evidence is sufficient to support a guilty finding if, after viewing the evidence in the light most favorable to the State, any rational trier of fact could have found the crime's essential elements beyond a reasonable doubt. *State v. Green*, 94 Wn.2d 216, 221, 616 P.2d 628 (1980). An evidence sufficiency challenge "admits the truth of the State's evidence and all inferences that reasonably can be drawn therefrom." *State v. Salinas*, 119 Wn.2d 192, 201, 829 P.2d 1068 (1992). We defer to the jury's assessment of witness credibility and evidence weight or persuasiveness. *State v. Carver*, 113 Wn.2d 591, 604, 781 P.2d 1308, 789 P.2d 306 (1989).

4

The witness tampering statute states in relevant part:

A person is guilty of tampering with a witness if he or she attempts to induce a witness or person he or she has reason to believe is about to be called as a witness in any official proceeding . . . to:

(a) Testify falsely or, . . . withhold any testimony.

RCW 9A.72.120(1)(a).

Contrary to Mr. Gilman's argument, the witness tampering statute does not require the State to subpoena the tampered person or otherwise notify a defendant who it intends to call. In construing a former version of the witness-tampering statute, our State Supreme Court held: "The offense is committed by endeavoring to prevent any person, whether subpoenaed as a witness or not, from appearing and giving evidence." *State v. Bringgold*, 40 Wash. 12, 19-20, 82 P. 132 (1905), *overruled on other grounds by State v. Henshaw*, 61 Wash. 390, 112 P. 379 (1910). Thus, while a subpoena or witness list would establish that the State intended to call a particular person to testify, such evidence is not necessary. Our Supreme Court has observed: "It is difficult to conceive of a situation in which an accused person might approach a person to absent himself from proceedings or change his testimony without at the same time being aware that he was a witness or at least having reason to believe that he was about to be called as such." *State v. Stroh*, 91 Wn.2d 580, 586, 588 P.2d 1182 (1979). Under *Stroh*, all that is required is a

5

showing that the accused had reason to believe the person is or probably is about to be called as a witness. *Stroh*, 91 Wn.2d at 583.

Mr. Gilman's second argument also fails. RCW 9A.72.120 does not criminalize a defendant's actions only if he believed he successfully induced a person to testify falsely. The statute only criminalizes an "attempt to induce" a witness to testify falsely at any official proceeding. *State v. Williamson*, 131 Wn. App. 1, 6, 86 P.3d 1221 (2004).

We hold that sufficient evidence establishes that Mr. Gilman had reason to believe Mr. Larioz would be called as a witness. Mr. Gilman asked Mr. Larioz to stand in front of a judge and lie to the court. Even though Mr. Larioz rejected Mr. Gilman's request, the evidence shows that at the moment of inducement, Mr. Gilman had reason to believe that Mr. Larioz would testify at an official proceeding. Moreover, Mr. Gilman's attempt to cover the crime by deleting Mr. Larioz from his Facebook account supports an inference that Mr. Gilman recognized that Mr. Larioz would be called to testify. By conspiring with Ms. Thomas to lie, Mr. Gilman had reason to believe the State would investigate the claim and call Mr. Larioz to testify. Viewed in the light most favorable to the State, the evidence was sufficient to convict Mr. Gilman of the charge of tampering with a witness.

Affirmed.

No. 32566-1-III
*State v. Gilman*

A majority of the panel has determined this opinion will not be printed in the

Washington Appellate Reports, but it will be filed for public record pursuant to RCW

2.06.040.

_____
Korsmo, J.

WE CONCUR:

_____
Brown, J.

_____
Siddoway, C.J.

7