FILED
COURT OF APPEALS
DIVISION II

2015 MAR 31 AM 8: 37

STATE OF WASHINGTON

BY_____
DEPUTY

# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

## DIVISION II

| | |
|---|---|
| STATE OF WASHINGTON, | No. 45768-7-II |
| Respondent, | |
| v. | |
| BRUCE J. LENNARTZ, | UNPUBLISHED OPINION |
| Appellant. | |

MELNICK, J. — Bruce J. Lennartz appeals his conviction for tampering with a witness, arguing that the evidence was insufficient to support his conviction, that prosecutorial misconduct during closing argument deprived him of a fair trial, and that his attorney's failure to object to that misconduct deprived him of his right to effective assistance of counsel. In a pro se statement of additional grounds (SAG), Lennartz makes additional claims of prosecutorial misconduct and ineffective assistance of counsel.

Because sufficient evidence showed that Lennartz attempted to alter the victim's testimony and because the prosecutor did not make any improper statements during closing argument, we reject Lennartz's claims of insufficient evidence, prosecutorial misconduct and ineffective assistance of counsel. The record does not support his remaining claims of error, and we affirm his conviction.

## FACTS

Shortly after midnight on July 14, 2013, Thurston County Deputy Sheriff Donald Wall responded to a 911 call from Samantha Youckton. When he arrived, Youckton pointed across the street, and Wall went over to talk to a hysterical and crying Doresa Klampe.[1] Klampe's face was

---

[1] Youckton lived near Klampe. Youckton was not available to testify at Lennartz's trial.

scratched and swollen, and she had a gash on her finger. Klampe said that she had argued with Lennartz, her boyfriend, and that he had punched, choked, and kicked her. Klampe added that Lennartz had prevented her from calling 911 by breaking one cell phone and knocking another out of her hands. Klampe gave written and recorded statements supporting these accusations. The police arrested Lennartz a few hours later in an RV parked next to Klampe's trailer.

The State charged Lennartz with assault in the second degree, assault in the fourth degree, and interfering with the reporting of domestic violence. The trial court entered a pretrial no-contact order that prohibited Lennartz from having any contact with Klampe and from coming within 500 feet of her residence. After his release on bail, Lennartz drove by Klampe's residence and sent her 60 text messages. Klampe reported those contacts to law enforcement and gave another recorded statement describing them. Following his return to custody, Lennartz phoned Klampe almost 30 times and attempted more than 100 additional calls.

The State then charged Lennartz by amended information with assault in the second degree, tampering with a witness, assault in the fourth degree, interfering with the reporting of domestic violence, and five counts of violating the pretrial no-contact order. Each count named Klampe as the victim and alleged domestic violence.

While testifying at Lennartz's trial, Klampe could not recall most of what happened on July 13, but she denied that Lennartz kicked and choked her or broke her cell phone. She testified that her injuries occurred when she entered her trailer through a window. She denied that her cell phone broke when Lennartz hit her hand with it, stating instead that the battery fell out when she threw the phone at him. The trial court admitted Klampe's written statement describing the assault as substantive evidence, and it admitted her recorded statement for impeachment purposes. The

trial court also admitted Deputy Wall's testimony about Klampe's initial oral statements under the excited utterance exception to the hearsay rule.

Deputy Ryan Hoover testified about responding to Klampe's complaint concerning the no-contact order violations and about photographing some of Lennartz's text messages. One text stated, "It's our fault. That's what I'm saying, our fault, not mine or yours, ours. That's what you should say too." Report of Proceedings (RP) at 275.

After Deputy Ryan Russell testified about taking Klampe's recorded statement describing the no-contact order violations, the trial court admitted Klampe's statement as substantive evidence. In that statement, Klampe responded as follows when Russell asked whether Lennartz had threatened her:

> In a vague sense that only I would understand, knowing him like I do, he might not come right out and say, I'm coming over there, I'm going to kill you, or I'm going to come over there and beat you up some more, but he has said things like, I'm coming back for more, and you're a weakling and a crybaby 'cause you called the cops, and things like that and that nature that, you know, to me are threatening.

Ex. 26, at 3.

When the deputy asked whether Lennartz was contacting her in an attempt to change her story, Klampe replied,

> He has been coercing me and he texted saying that I caused all this trouble, that I need to go down to the courthouse and I need to fix it, and so, you know, things like that.

Ex. 26, at 4. Klampe then explained why she supported the no-contact order:

> I do because I feel even more so now than in the beginning that, that I could be endanger [sic] of, of another assault if, you know, if I don't do what he. . . tells me . . . to do, fix this so he can come back.

Ex. 26, at 5.

3

The trial court also admitted recordings of four telephone calls that Lennartz made to Klampe from jail in October 2013. During a call on October 10, Lennartz told Klampe to write to the judge or prosecutor "saying we'll go to classes together, they have to drop the domestic deal." RP at 324. When he told her "just do all you can do," she replied that she was trying, and he said, "How are you trying? Who you been talking to?" RP at 325. He then said, "Tell them it was them texting me on your phone." RP at 326. Klampe replied, "It could have been anybody. I have texted on your phone before." RP at 326. Lennartz responded, "Yeah. We'll just see what comes about it. We'll just see what comes about it. Okay?" RP at 326.

On October 12, Lennartz told her, "And as far as me texting stuff like that, you know, Sammy had your phone too, or had a phone too, right?" RP at 330. He added, "I want to get out of this thing, you know. . . . I want you to set up, honey, I'm tired of this." RP at 330-31. He also stated, "[Y]ou're helping me, you'll help anybody[,] I know you will." RP at 336.

On October 14, Lennartz raised the subject of Klampe's injuries: "I don't know what you're going to do. I don't know. But the prosecutor wants to know where these marks came from, okay?" RP at 341. Klampe replied, "Probably from when she . . . broke through the window . . . to get in there that day . . . when she locked her keys in."[2] RP at 341. Lennartz then appeared to tell his version of events:

> I don't know what kind of marks there were. I want to know why she was sitting in a bar in that trailer house with two half gallons of whiskey. I don't drink whiskey, you know what I mean? I'm not pushing this off on nobody, like I said, but why was somebody sitting in a bar in that trailer house when I got a motor home, you're sitting over there all alone, I just woke up from a nap. I just woke up from a nap and I went over there and asked if somebody had made a wood delivery. . . . Yeah, you tried to hit me, somebody tried to hit me[,] . . . phone come out of her hand, battery, phone hit the ground, battery fell out of it.

---

[2] Klampe was apparently referring to herself in the third person.

RP at 341-42.

On October 22, Lennartz told Klampe, "I just want [to] tel[l] somebody to tell the truth, or just tell what the hell happened, you know what I mean?" RP at 349. Lennartz then said, "You had a chance to talk to the investigator, he was there. I was told that you didn't want to say nothing, you know. You know what I mean?" RP at 350. He added, "If somebody don't speak up, somebody lies, somebody got hurt some other way, you know, it's making me look bad." RP at 350. When Klampe said that she wanted to do the right thing, he replied, "Well, what's right now is fighting something that somebody put me in here, okay? . . . Sammy has got to admit to lying, okay?" RP at 351. He continued:

> And she's going to have to admit to lying or something, something, you know, but marks on you, where did the marks come from? Everybody says I put them on there. Where did they come from? I love you with all my heart, okay? Okay?

RP at 351.

Lennartz then stated, "[A]ll I did is asked yo[u] if you sold wood to a customer and then you raged, started yelling and screaming. I just took off." RP at 352. Klampe responded, "I'll do whatever it takes, I swear I will." RP at 353. She added that Sammy had told her she wasn't there, that she didn't see anything, and that she lied about what she said. RP 355. Lennartz replied, "That's what I'm talking about. I know the marks—but did you put marks on yourself or I don't know, somebody said marks through the window or something." RP at 355.

During closing argument, the prosecutor referred to these conversations and quoted Lennartz as saying, "Well, as far as me texting, Sammy could have had your phone." RP at 413. The prosecutor also quoted Lennartz as telling Klampe to tell the prosecutor "it wasn't even you I was texting." RP at 413. The prosecutor then referred to the number of phone calls that Lennartz made and the pressure that those calls put on Klampe. After defense counsel argued that Klampe's

testimony was confused, the prosecutor asked the jury to put itself in Klampe's shoes in explaining why she changed her story. Defense counsel did not object to any of these statements.

The jury could not reach a verdict on the charge of assault in the second degree but found Lennartz guilty of the remaining charges. The trial court sentenced Lennartz to a standard range sentence of 51 months for witness tampering and to 364 days on each of the remaining gross misdemeanor counts. Lennartz appeals the witness tampering conviction.

## ANALYSIS

### I.     SUFFICIENCY OF THE EVIDENCE

Lennartz argues that insufficient evidence existed to prove that he tampered with a witness because the State's case was based on speculation rather than reasonable inferences from the evidence. We disagree.

Due process requires the State to prove all elements of a crime beyond a reasonable doubt. *State v. Aver*, 109 Wn.2d 303, 310, 745 P.2d 479 (1987). Evidence is sufficient to support a conviction if, viewed in the light most favorable to the prosecution, it permits any rational trier of fact to find the essential elements of the crime beyond a reasonable doubt. *State v. Green*, 94 Wn.2d 216, 221, 616 P.2d 628 (1980). "A claim of insufficiency admits the truth of the State's evidence and all inferences that reasonably can be drawn therefrom." *State v. Salinas*, 119 Wn.2d 192, 201, 829 P.2d 1068 (1992). Circumstantial and direct evidence are equally reliable. *State v. Delmarter*, 94 Wn.2d 634, 638, 618 P.2d 99 (1980). We defer to the trier of fact on issues of conflicting testimony, credibility of witnesses, and the persuasiveness of the evidence. *State v. Walton*, 64 Wn. App. 410, 415-16, 824 P.2d 533 (1992).

To convict Lennartz of tampering with a witness, the State had to prove that he attempted to induce a witness to testify falsely or to withhold relevant testimony. RCW 9A.72.120(1)(a); *see*

6

*State v. Williamson*, 131 Wn. App. 1, 6, 86 P.3d 1221 (2004) (a person tampers with a witness if he attempts to alter the witness's testimony). Proof of such an attempt does not depend only on the literal meaning of the words used. *State v. Rempel*, 114 Wn.2d 77, 83, 785 P.2d 1134 (1990). The State is entitled to rely on the inferential meaning of the words and the context in which they were used. *Rempel*, 114 Wn.2d at 83-84. Relevant to that context is the effect of the inducement attempt on the prospective witness. *Rempel*, 114 Wn.2d at 84.

Lennartz claims that the facts here resemble those in *Rempel*, where the defendant's alleged attempts to induce the victim not to testify included telephone calls containing an apology, a statement that "it" was going to ruin his life, and a request that she "drop the charges." 114 Wn.2d at 83. The victim testified that the defendant's calls did not concern her and that he was only a nuisance. *Rempel*, 114 Wn.2d at 84. This evidence was not sufficient to support the witness tampering conviction. *Rempel*, 114 Wn.2d at 84.

In contrast, Klampe stated that she understood that Lennartz was coercing her into fixing things so that he could come back to her, and she added that she was in danger of another assault if she did not do as he said. Although Lennartz did not expressly tell Klampe to change her testimony, his attempt to persuade her to do so was clear. He suggested that someone else texted her, that she caused her own injuries, and that he was not responsible for damaging her cell phone. He also told her repeatedly to keep trying to help him. When viewed in the light most favorable to the State, we hold that the evidence and the reasonable inferences therefrom were sufficient to show that Lennartz attempted to induce Klampe to testify falsely.

II.     PROSECUTORIAL MISCONDUCT

Lennartz also argues that the prosecutor's misstatements during closing argument deprived him of a fair trial. We disagree.

A defendant who alleges prosecutorial misconduct during closing argument first must establish that the prosecutor's statements were improper. *State v. Emery*, 174 Wn.2d 741, 759, 278 P.3d 653 (2012). Once a defendant does so, we must determine whether the improper statements prejudiced the defendant. *Emery*, 174 Wn.2d at 760. If the defendant did not object to the statements at trial, he is deemed to have waived any error unless the misconduct was so flagrant and ill-intentioned that an instruction could not have cured the resulting prejudice. *Emery*, 174 Wn.2d at 760-61.

Lennartz urges us to apply the standard of review for constitutional error because the prosecutor's alleged misstatements violated his right to a fair trial. The constitutional error standard requires us to vacate a conviction unless it appears, beyond a reasonable doubt, that the misconduct did not affect the verdict. *State v. Monday*, 171 Wn.2d 667, 680, 257 P.3d 551 (2011). Courts have applied this standard to a prosecutor's direct comments on a defendant's exercise of a constitutional right and to a prosecutor's injection of improper racial biases into a trial. *Monday*, 171 Wn.2d at 680; *State v. Gregory*, 158 Wn.2d 759, 808 n.24, 147 P.3d 1201 (2006), *overruled on other grounds*, *State v. W.R. Jr.*, 181 Wn.2d 959, 336 P.3d 1134 (2014). No such comments are at issue here. Because the purpose of the standard of review articulated in *Emery* is to determine whether a defendant's right to a fair trial was violated, we apply that standard here. 174 Wn.2d at 762.

A. Mischaracterizing the Evidence

Lennartz first takes issue with the prosecutor's argument that he told Klampe "[a]s far as me texting, Sammy had your phone too, right?" RP at 413. The record shows that Lennartz actually said, "And as far as me texting stuff like that, you know, Sammy had your phone too, or had a phone too, right?" RP at 330. Lennartz complains that by omitting the final clause of his

statement, the prosecutor relied on "subtle omission" to support the argument that he was attempting to make up a new story. Brief of Appellant, at 16.

Lennartz also complains about these statements:

But we do know that on October the 10th the defendant said, "Tell him it wasn't even you I was texting." And this happened during the time when he was talking about you need to write a letter to the prosecutor. You need to write a letter to the judge. It was right after he said, "You need to write a letter to the prosecutor." He said, "Tell him it wasn't even you I was texting."

RP at 412-13. The record shows that Lennartz actually said, "Tell them we'll both go through counseling, tell them, tell them you knew I was texting. Tell them it was them texting me on your phone." RP at 325-26. Lennartz earlier had urged Klampe to write a letter to the judge or prosecutor "saying we'll go to classes together, they have to drop the domestic deal." RP at 324. Lennartz complains that the prosecutor improperly argued that he told Klampe to say that he had not texted her, and he maintains that their conversation about writing letters was aimed solely at changing the no-contact order.

We view allegedly improper statements within the context of the prosecutor's entire argument, the issues in the case, the evidence discussed in the argument, and the jury instructions. *State v. Dhaliwal*, 150 Wn.2d 559, 578, 79 P.3d 432 (2003). A prosecutor has "'wide latitude in making arguments to the jury and . . . [may] draw reasonable inferences from the evidence.'" *State v. Fisher*, 165 Wn.2d 727, 747, 202 P.3d 937 (2009) (quoting *Gregory*, 158 Wn.2d at 860).

We do not believe the prosecutor's paraphrasing of Lennartz's statements to Klampe mischaracterized the evidence. Furthermore, the prosecutor began her argument by reminding the jury about the court's instruction that her statements during closing argument were not evidence. The prosecutor drew reasonable inferences from the evidence in arguing that Lennartz had

attempted to influence Klampe's testimony, and we do not see her failure to quote his statements verbatim as misconduct.

    B.    Violating the "Golden Rule"

Lennartz argues further that the prosecuting attorney improperly invoked the "golden rule" during her initial argument and later in her rebuttal argument:

> In addition, we have over 100 attempted phone calls during this period of time. You can imagine, I submit to you, that it would be quite influencing to have your phone ringing from the Thurston County Jail over 100 times over a period of a few months knowing that the defendant can contact you, knowing that as you're about to testify that the defendant is still trying to contact you and what sort of affect [sic] that had on Mrs. Klampe.

RP at 418-19.

> So you have to ask yourself if you were in her position, in her shoes, not in yours but in hers, you were homeless where the defendant provided you a place to live, the defendant has dirt on you, apparently, apparently has some dirt on some people you hang out with, ask yourselves why she maybe was motivated to change her story.

RP at 450.

A "golden rule" argument urges the jury to place themselves in the position of a party or to grant a party the same recovery that they would want if they were in the same position. *Adkins v. Aluminum Co. of Am.*, 110 Wn.2d 128, 139, 750 P.2d 1257, 756 P.2d 142 (1988). It is "'improper because it encourages the jury to depart from neutrality and to decide the case on the basis of personal interest and bias rather than on the evidence.'" *Adkins*, 110 Wn.2d at 139 (quoting *Rojas v. Richardson*, 703 F.2d 186, 191 (5th Cir. 1983)). Our Supreme Court has suggested that the prohibition on golden rule arguments may not apply in the criminal context, where such arguments may be better addressed simply as improper appeals to the jury's sympathy or passions. *State v. Borboa*, 157 Wn.2d 108, 124 n.5, 135 P.3d 469 (2006). Regardless of the

proper way to frame the argument, we are not convinced that the prosecutor committed misconduct with his remarks at issue.

The prosecutor's initial invitation to the jury to imagine how Klampe felt was a reasonable attempt to explain her inconsistent testimony. The prosecutor's subsequent suggestion that jurors put themselves in Klampe's position was a legitimate response to defense counsel's closing argument about Klampe's confusing testimony. *See State v. Davenport*, 100 Wn.2d 757, 761, 675 P.2d 1213 (1984) (prosecutor's remarks in rebuttal are not misconduct if they were invited by defense counsel's closing argument as long as the remarks do not go beyond that required for pertinent reply) (quoting *State v. LaPorte*, 58 Wn.2d 816, 822, 365 P.2d 24 (1961)). We hold that the prosecutor made no improper appeal to the jury's sympathy or passion in the language cited above. We reject Lennartz's claim of prosecutorial misconduct.[3]

III.    SAG Arguments

Lennartz makes additional claims of prosecutorial misconduct and ineffective assistance of counsel in his pro se SAG. We reject these claims.

First, Lennartz contends that his attorney waived his speedy trial rights against his direction. The record shows otherwise. On October 28, 2013, the trial court granted the State's request for a two-day continuance because both the prosecutor and defense counsel were unavailable to begin trial that day. The record does not show that Lennartz objected. The following day, defense counsel sought a continuance of the trial date to December 16 because a key defense witness could not appear on the scheduled date. Defense counsel stated that Lennartz

---

[3] Lennartz also argues that his attorney rendered ineffective assistance of counsel by not objecting to the prosecutor's arguments. Because there was no misconduct, defense counsel was not deficient in failing to object to these statements. *See State v. Thomas*, 109 Wn.2d 222, 225-26, 743 P.2d 816 (1987) (to prevail on ineffective assistance claim, defendant must show that counsel's performance was deficient and that the deficiency was prejudicial).

11

had signed the agreed order of continuance. The court granted the continuance after noting Lennartz's agreement. Nothing in the record supports Lennartz's current claim that his case was continued against his will. Nor is there any support for his claim that pretrial matters were repeatedly postponed due to defense counsel's personal matters.

Second, Lennartz contends that his attorney tampered with Klampe by asking her to provide clothing for Lennartz to wear during trial. We do not see this request as an attempt to influence Klampe's testimony. Lennartz argues further that when Klampe arrived at his attorney's office, his attorney threatened her "to entice cooperation in his favor." SAG at 2. There is nothing in the record to support this claim. If Lennartz has evidence outside the record, his argument is best raised in a personal restraint petition. *See State v. McFarland*, 127 Wn.2d 322, 335, 899 P.2d 1251 (1995) (the proper procedure for raising issues dependent on matters outside the record is a personal restraint petition).

Third, Lennartz argues that both the prosecutor and his attorney "projected the outcome of the trial" and that defense counsel never represented that he had Lennartz's best interests at hand. SAG at 2. Without specific examples of misconduct supporting these statements, they are too vague to consider further. RAP 10.10(c).

Fourth, Lennartz complains that his attorney refused to withdraw when Lennartz wanted to fire him. Here again, the record contains no support for this claim. Lennartz may provide supporting evidence in a personal restraint petition.

Finally, Lennartz contends that defense counsel never addressed the concerns that Lennartz was allowed to communicate only in writing. Again, this statement is too general to entitle Lennartz to relief. If he has specific information supporting his claims, he may file a personal restraint petition. *McFarland*, 127 Wn.2d at 335, 338 n.2.

We affirm Lennartz's conviction.

A majority of the panel having determined that this opinion will not be printed in the Washington Appellate Reports, but will be filed for public record in accordance with RCW 2.06.040, it is so ordered.

Melnick, J.

We concur:

Maxa, P.J.

Lee, J.