# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

## DIVISION II

| | |
|---|---|
| STATE OF WASHINGTON, | No. 48180-4-II |
| Respondent, | |
| v. | |
| MALACHI MARK WATKINS, | UNPUBLISHED OPINION |
| Appellant. | |

JOHANSON, J. — Malachi Mark Watkins appeals his bench trial convictions for failure to register as a sex offender with one prior offense[1] and tampering with a witness.[2] He argues that the amended information failed to allege all of the essential elements of the failure to register charge and that there was insufficient evidence of the tampering with a witness charge. In his statement of additional grounds[3] (SAG), he reiterates his counsel's sufficiency challenge and contends that the evidence was also insufficient to prove the failure to register offense. Because

---

[1] RCW 9A.44.132(1)(a). The legislature amended RCW 9A.44.132 in 2015. LAWS OF 2015, ch. 261, § 5. Because this amendment, which added references to prior convictions "pursuant to federal law" and a new section criminalizing a refusal to provide deoxyribonucleic acid, does not affect our analysis, we cite to the current version of the statute.

[2] RCW 9A.72.120(1).

[3] RAP 10.10.

the amended information was constitutionally adequate and the evidence was sufficient to support both convictions, we affirm.

FACTS

I. BACKGROUND

Watkins has prior convictions for sex offenses and has been required to register as a sex offender for several years. On June 22, 2015, Portland Police Officer John Maul, Jr., contacted Watkins in a restaurant parking lot after a report of some suspicious activity. When the officer arrived, he saw a "little truck with a canopy jammed full of property and then property kind of all about the parking lot." 1 Report of Proceedings (RP) at 138. Watkins told the officer that he was just reorganizing his "truck and canopy" and gave the officer a false name and date of birth. 1 RP at 140. When the officer could not find the name in the system, he told Watkins to provide to him his correct name; Watkins admitted he had given a false name and said he thought that there was a warrant for his arrest. When the officer did not find a warrant, he released Watkins.

On July 3, a Clark County Sheriff's detective was investigating an unrelated crime when Watkins's "name came up in that investigation." 1 RP at 74. The detective contacted the Camas Police Department and asked them to verify whether Watkins was at his registered address.

On July 4, Camas Police Department Detective Katie Brianne Bieber conducted a sex offender registration check on Watkins at his last reported address, his parents' home. Detective Bieber first contacted Watkins's grandmother, who told the detective that Watkins's parents were sleeping and that Watkins did not live there.

Detective Bieber returned to the residence later that day and spoke with Watkins's father, Dale Watkins. Dale[4] told the detective that Watkins had not been living there for about a month and that Watkins was somewhere in Portland. Dale voluntarily filled out a written statement to this effect.

Watkins was arrested in Portland on July 7. The State charged Watkins with failure to register as a sex offender.

On July 29, Watkins called his mother, Lynn Watkins, from the jail, and the conversation was recorded:

> [Watkins]: Yeah. Uh-huh. But, I don't know, I have -- I have a feeling -- I mean, I don't -- I don't know -- I don't know what God's plan is, but I have a feeling that I might not be going back to prison. That it's something that --
> [Lynn]: (Inaudible)
> [Watkins]: Because I've gotten them thrown out before.
> [Lynn]: Right.
> [Watkins]: And they have to prove --
> [Lynn]: Well --
> [Watkins]: They have to prove in a court of law beyond a reasonable doubt, you know what I mean. They have to prove it.
> [Lynn]: Yeah?
> [Watkins]: And I don't know if -- I don't know necessarily if they can.
> [Lynn]: Well, I will tell you that when they came looking for you, dad did sign a paper that said that you didn't live here anymore.
> [Watkins]: Yeah, I was going to talk to you about that.
> [Lynn]: Well, I mean, I think he got caught up in the fact that the officer was female and was polite and personable with him as opposed to the last guy that was here that was basically the opposite of that.
> [Watkins]: Right. Well, there you go.
> [Lynn]: And --
> [Watkins]: And there's a --
> [Lynn]: Yeah?
> [Watkins]: And there's a reason to recant your statement.
> [Lynn]: Oh, yeah.

---

[4] We use the first names of Watkins's parents, Dale Watkins and Lynn Watkins, for clarity.

> [Watkins]: Stuff gets thrown out all the time because of recanted statements.
> [Lynn]: Yeah.
> [Watkins]: And, you know, it's --
> [Lynn]: Yeah, I don't --
> [Watkins]: That's all. We don't need to talk about it over the phone. And they --
> [Lynn]: Yeah.
> [Watkins]: -- record it. They probably just -- you know what I mean. I'm not --
> [Lynn]: Yeah.
> [Watkins]: -- guilty anyway, so we'll see. We will see.

1 RP at 105-06.

On August 22, Watkins again called his mother. This time, his father was with his mother and participated in the conversation. This conversation was also recorded:

> [Watkins]: But, you know, my lawyer is supposed to be bringing in the -- the statement or whatever that dad signed or wrote or whatever that is --
> [Lynn]: Yeah.
> [Watkins]: -- that --
> [Lynn]: He wasn't thinking.
> [Watkins]: Yeah, I know that's something that can -- you can -- you know, I'm -- I'm -- I don't know for sure if -- if anybody can get in trouble but recant the statement. I'm pretty sure you can just do that, like, say, hey, no more of this statement, you know, but we'll see. I'll talk to my lawyer and ask him about it a little bit and see what he has to say about that.
> [Lynn]: Yeah.
> [Watkins]: Because to me it's like --
> [Lynn]: It was -- it wasn't just a statement. He actually signed some papers.
> [Watkins]: Well, yeah, but did he write it, or did she write it?
> [Lynn]: I don't know.
> [Watkins]: Or if -- because I'm thinking if she printed it, then he just signed -- he read it and signed it or whatever, that it's, like, how is that -- how is that going to hold up against -- you know what I mean? How is someone's signature going to be enough to convince a judge beyond a reasonable doubt, you know.
> [Dale]: She asked me if you lived there. I said no.
> [Watkins]: Yeah.
> [Dale]: She had some paperwork there, and I signed (inaudible).
> [Watkins]: Yeah. No, I -- I -- yeah, I understand. I'm just trying to think ahead and see, you know, because to me that's all they have going -- you know, going on their side really.

4

They did -- I did have contact with the police in Portland. They woke me up. I was sleeping in a car. And that's where the -- that's where they think that I had -- I know stuff about the murder because it was the dude's car that actually got murdered. I was, you know, looking after his car for him for a different reason. And I fell asleep in the car.

[Dale]: Fair -- fair enough.

[Watkins]: Yeah. Good idea. Anyways --

[Dale]: Shut up.

[Watkins]: I know. I know.

[Lynn]: Gosh, you're mean. Geez, dad, chill.

[Dale]: (Inaudible).

[Watkins]: He's right.

[Lynn]: Yeah, I know, but the second one wasn't necessary. I think you got the message the first time.

1 RP at 39-41.

Based on these calls, the State amended the information to add a charge of tampering with a witness, in addition to the failure to register charge.[5] Watkins did not challenge the original or the amended information.

---

[5] The amended information alleged, in part,

That he, MALACHI MARK WATKINS, in the County of Clark, State of Washington, on or about and between June 5, 2015, and July 4, 2015, having a duty to register under RCW 9A.44.130 for a felony sex offense as defined in that section, to-wit: Clark County Superior Court Cause No. 01-8-00119-7 – Child Molestation in the First Degree (3 counts) and Incest, and having been convicted in this state or pursuant to the laws of another state of a felony failure to register as a sex offender on one prior occasion, to-wit: Clark County Superior Court Cause No. 01-8-01163-0, did knowingly fail to comply with any of the requirements of RCW 9A.44.130; contrary to [RCW] 9A.44.132(1)(a).

Clerk's Papers (CP) at 2.

## II. Procedure

## A. Bench Trial

Watkins waived his right to a jury trial. The State introduced recordings of the July 29 and August 22 calls, and Detective Bieber and other law enforcement officials testified as described above. Watkins did not present any witnesses.[6]

### 1. Dale's Testimony

Dale was also a witness for the State. He attempted to recant his July 4 statement and testified that Watkins had been living in the family home from at least June 2015. He asserted that Watkins did not stop living in the home in July, but he admitted that it was possible that Watkins was spending more time in Portland because Dale had not seen Watkins for "a week or two" after the beginning of June. 1 RP at 29.

Dale further testified that when he spoke to Detective Bieber on July 4, Watkins was still living in the home. When the State asked him whether he told Detective Bieber something different, Dale responded, "I may have." 1 RP at 29. The State then presented the July 4 statement, which Dale had completed under penalty of perjury, in which Dale stated that Watkins did not live in the home. Dale responded by testifying that he had "made a mistake when [he] wrote" the statement. 1 RP at 30. He also denied telling the detective that Watkins had not lived there for a month and asserted that he had said only that he had not seen Watkins. But he admitted that he told the detective that Watkins could be in Portland and that Watkins was having drug issues, which was why he thought that Watkins was avoiding him.

---

[6] Watkins stipulated to his prior felony sex offenses and to his prior failure to register as a sex offender conviction.

The State also played the August 22 call for Dale. He acknowledged that during this call, he understood that Watkins was "indicating his desire for [Dale] to take back [his] statement." 1 RP at 47. But he denied Watkins or anyone else asking him to "change [his] story." 1 RP at 53.

2. TRIAL COURT'S ORAL RULING

In its oral ruling, the trial court expressly found that "[Dale] was not credible at the time of trial." 2 RP at 194. It found that his responses were evasive and that he "did his best to recant his prior statement made to [Detective] Bieber." 2 RP at 194-95. The trial court also gave a detailed oral ruling on the tampering with a witness charge, concluding that Watkins's statements in the recorded calls indicated an intent to induce his father to recant or to withhold his testimony and that this attempt was successful because Dale attempted to recant his statement at trial.

3. WRITTEN FINDINGS OF FACT AND CONCLUSIONS OF LAW

The trial court then entered written findings of fact and conclusions of law. The trial court found that (1) Watkins had several prior sex offenses and was required to register as a sex offender between June 5 and July 4, 2015, (2) he had a prior conviction for failure to register from 2001, (3) his last registered address was his parents' home, (4) after June 5, and at least two weeks before July 4, Watkins was no longer living at his parents' home, and (5) Watkins failed to comply with the sex offender registration requirements by failing to notify the Clark County Sheriff's Office within three business days of his ceasing to live at his parents' home. The trial court also made a finding related to Officer Maul's contact with Watkins in Portland on June 22 and Watkins's arrest in Portland on July 7.

The trial court also found that

7

1.7  [o]n July 4, 2015, Detective Bieber contacted and interviewed [Dale] at 1750 NW Brady Rd., Camas, WA; on that date, [Dale] made statements to Detective Bieber about [Watkins's] living situation.

1.8  At trial, [Dale] testified that he did not see [Watkins] at 1750 NW Brady Rd., Camas, WA, for a period of at least two weeks prior to July 4, 2015.

. . . .

1.11 While incarcerated at the Clark County Jail, [Watkins] called the cell phone of his mother and spoke with her on July 29, 2015; during this conversation, [Watkins] stated that his father, [Dale], could recant his prior statement to Detective Bieber about [Watkins's] living situation;

1.12 On August 22, 2015, while incarcerated, [Watkins] called his mother on her cell phone while she was traveling in a car with [her] husband, [Dale]; during this conversation, [Watkins] stated that [Dale] could recant his statement to Detective Bieber; [Dale] was able to hear [Watkins] make this statement, which caused [Dale] to believe that [Watkins] wanted him to recant his prior statements to Detective Bieber.

CP at 27-28. In addition, the trial court incorporated by reference the content of the audio recordings and its "oral factual findings." CP at 28.

The trial court concluded that Watkins was guilty of failure to register and tampering with a witness. Watkins appeals his convictions.

ANALYSIS

Watkins argues that the amended information failed to allege all essential elements and that his convictions are not supported by substantial evidence. These arguments fail.

I. AMENDED INFORMATION

Watkins argues that the amended information failed to advise him of all of the elements of the failure to register charge because it did not allege that he failed to register and merely referred to his failure to comply with the requirements of former RCW 9A.44.130 (2011).[7] We disagree.

---

[7] To the extent Watkins may also be asserting that the information failed to include the mens rea element, that argument is clearly without merit as the information charged that he "*knowingly* fail[ed] to comply" with the registration requirements. CP at 2 (emphasis added).

A. STANDARD OF REVIEW

A charging document is constitutionally adequate if it sets forth the essential elements of the charged offense. U.S. CONST. amend. VI; CONST. art. I, § 22; *State v. Kjorsvik*, 117 Wn.2d 93, 97, 812 P.2d 86 (1991). "The purpose of this 'essential elements' rule is to give notice of the nature and cause of an accusation against the accused so that a defense can be prepared." *State v. Campbell*, 125 Wn.2d 797, 801, 888 P.2d 1185 (1995). The charging document need not use the exact words of the statute. *Kjorsvik*, 117 Wn.2d at 108. Rather, we evaluate whether "all the words used would reasonably apprise an accused of the elements of the crime charged." *Kjorsvik*, 117 Wn.2d at 109.

Where, as here, no challenge is raised in the trial court, we liberally construe the charging document in favor of validity on appeal. *Kjorsvik*, 117 Wn.2d at 105. In liberally construing the charging document, we ask whether the elements of the offense "appear in any form, or by fair construction can . . . be found, in the charging document.'" *Kjorsvik*, 117 Wn.2d at 105. Where the essential elements are present in the charging document, we then determine whether the defendant was nevertheless "actually prejudiced by the inartful language which caused a lack of notice." *Kjorsvik*, 117 Wn.2d at 106.

B. NO MISSING ELEMENT

The State charged Watkins with failure to register as a sex offender under RCW 9A.44.132(1), which provides,

> A person commits the crime of failure to register as a sex offender if the person *has a duty to register under RCW 9A.44.130* for a felony sex offense *and* knowingly *fails to comply with any of the requirements of RCW 9A.44.130.*

(Emphasis added.)

The amended information alleged,

> That he, MALACHI MARK WATKINS, in the County of Clark, State of Washington, on or about and between June 5, 2015, and July 4, 2015, *having a duty to register under RCW 9A.44.130* for a felony sex offense as defined in that section, to-wit: Clark County Superior Court Cause No. 01-8-00119-7 – Child Molestation in the First Degree (3 counts) and Incest, and having been convicted in this state or pursuant to the laws of another state of a felony failure to register as a sex offender on one prior occasion, to-wit: Clark County Superior Court Cause No. 01-8-01163-0, *did knowingly fail to comply with any of the requirements of RCW 9A.44.130*; contrary to [RCW] 9A.44.132(1)(a).

CP at 2 (emphasis added).

Watkins argues that the amended information failed to advise him that the State had to prove that he "failed to register" and that its mere reference to the registration statute, former RCW 9A.44.130, was insufficient to put him on notice of this element. Br. of Appellant 14. Although the amended information does not contain the exact phrase "failed to register," it alleged that Watkins *had a duty to register* under former RCW 9A.44.130 and that he *failed to comply with the requirements of former RCW 9A.44.130*. Read together, these two phrases clearly placed Watkins on notice that the State was alleging that Watkins had knowingly failed to register. Furthermore, Watkins does not show that the language in the information nevertheless failed to put him on notice of the charge—his phone calls alone demonstrate that he was aware that he had been charged with failure to register. Accordingly, this argument fails.

## II. SUFFICIENCY OF THE EVIDENCE

Watkins next argues that the evidence was insufficient to support his convictions. Again, we disagree.

No. 48180-4-II

## A. Standard of Review

When reviewing the sufficiency of the evidence in support of a conviction following a bench trial, we determine whether substantial evidence supports the challenged findings of fact and whether the findings support the trial court's conclusions of law. *State v. Alvarez*, 105 Wn. App. 215, 220, 19 P.3d 485 (2001). "Substantial evidence is evidence sufficient to persuade a fair-minded, rational person of the finding's truth." *State v. Stevenson*, 128 Wn. App. 179, 193, 114 P.3d 699 (2005). A challenge to the sufficiency of evidence in support of a conviction admits the truth of the State's evidence and all reasonable inferences that can be drawn from it. *State v. Kintz*, 169 Wn.2d 537, 551, 238 P.3d 470 (2010) (quoting *State v. Salinas*, 119 Wn.2d 192, 201, 829 P.2d 1068 (1992)). We do not review a trial court's credibility determinations. *State v. Camarillo*, 115 Wn.2d 60, 71, 794 P.2d 850 (1990).

## B. Tampering With a Witness

To prove the tampering with a witness charge, the State had to prove that Watkins attempted to induce his father to testify falsely or to withhold testimony. RCW 9A.72.120(1). Watkins argues that his statements during the two recorded telephone calls were not sufficient to show that he was attempting to induce his father to testify falsely or to withhold evidence.[8] We disagree.

---

[8] Watkins assigns error to findings of fact 1.11, 1.12, and 1.14, which relate to whether the calls established an intent to induce his father to recant. But he does not present any specific argument tailored to any of these findings; instead, he argues generally that there is not substantial evidence of an intent to induce.

11

Watkins argues that this case is similar to *State v. Rempel*, 114 Wn.2d 77, 785 P.2d 1134 (1990). In *Rempel*, the only evidence supporting the witness tampering charge was that the defendant had told the victim that the criminal charges were going to ruin his life and asked her to drop the charges. 114 Wn.2d at 81-82. Our Supreme Court held that this was not sufficient to establish witness tampering because the context in which the defendant made his statements did not support "any inference that the request to 'drop the charge' was in fact an inducement to withhold testimony from a later trial," and the victim testified that the defendant's calls did not influence her. *Rempel*, 114 Wn.2d at 84.

Here, in contrast, Watkins's statements, the context, and Dale's response to Watkins's statements during the recorded phone calls support the conclusion that Watkins was attempting to induce his father to testify falsely or withhold relevant testimony. Watkins's statements were made in the context of discussing how to overcome his father's inculpatory statement, and his father's testimony at the bench trial was largely an attempt to recant this statement. In its oral ruling, which was incorporated into its written finding by reference, the trial court found that Dale's testimony was not credible and that his attempt to recant his earlier statement failed. Because Watkins's statements during the phone call were direct comments on how to undermine his father's earlier statement, which statement the trial court found credible, and his father clearly responded to Watkins's statements by attempting to recant his written statement, the context supports the conclusion that Watkins's statements were intended to induce his father to recant. Thus, taking the evidence in the light most favorable to the State, substantial evidence supports the trial court's

finding that Watkins intended to induce his father to testify falsely or withhold relevant evidence.[9]

Accordingly, this argument fails.

## C. FAILURE TO REGISTER

Finally, in his SAG, Watkins asserts that the evidence was insufficient to support the failure to register conviction because the evidence failed to prove beyond a reasonable doubt that he was not residing in his parents' home. We disagree.

The trial court found that Watkins had ceased living in his parents' home at least two weeks before July 4, 2015. At the bench trial, Dale testified that he had not seen Watkins for some time before July 4, 2015, and Detective Bieber testified that Watkins's grandmother told her that Watkins was not living at his parents' residence. In addition, law enforcement officers testified that they had contact with Watkins in Portland on June 22, and he was arrested in Portland on July 7, further supporting the conclusion that Watkins was in Portland and not in Washington during this time. This evidence, taken in the light most favorable to the State, is sufficient to support the trial court's finding that Watkins was no longer residing in his parents' home. Accordingly, this argument fails.

---

[9] Watkins also argues that this case is unlike *State v. Lubers*, 81 Wn. App. 614, 915 P.2d 1157 (1996), or *State v. Sanders*, 66 Wn. App. 878, 833 P.2d 452 (1992). Although the evidence of witness tampering was more direct in *Lubers* and *Sanders*, as discussed above, taken in context, the evidence here was sufficient to support the conviction. *Lubers*, 81 Wn. App. at 622 (evidence of witness tampering included evidence that the defendant asked a witness to write a letter recanting information he had given to the police and stating that a different person had committed the crime); *Sanders*, 66 Wn. App. at 889-90 (evidence of witness tampering included instructing the victim's mother to tell the victim to stop accusing the defendant and taking other steps to induce the victim and other family members to leave the jurisdiction).

No. 48180-4-II

Because the amended information was constitutionally adequate and the evidence was sufficient to support the convictions, we affirm.

A majority of the panel having determined that this opinion will not be printed in the Washington Appellate Reports, but will be filed for public record in accordance with RCW 2.06.040, it is so ordered.

JOHANSON, J.

We concur:

WORSWICK, P.J.

SUTTON, J.