# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

## DIVISION  II

| | |
|---|---|
| STATE OF WASHINGTON, | No.  54506-3-II |
| Respondent, | |
| v. | |
| ARRON JOHN WALKER, | UNPUBLISHED OPINION |
| Appellant. | |

LEE, J. — Arron J. Walker appeals his convictions for tampering with a witness (Counts IX and X), and violation of an order of protection (Count XII).  Walker argues that there was insufficient evidence to support either of the tampering with a witness convictions or the violation of an order of protection conviction.  Further, Walker submitted a statement of additional grounds (SAG),[1] arguing that there was insufficient evidence to support his convictions for violation of an order of protection (Counts XI and XII).

We hold that sufficient evidence supports Walker's conviction for tampering with a witness charged in Count X and the convictions for violation of an order of protection charged in Counts XI and XII, but there was insufficient evidence to support the conviction for tampering with a witness charged in Count IX.  Therefore, we affirm the conviction for tampering with a witness conviction charged in Count X and the convictions for violation of an order of protection charged

---

[1]  RAP 10.10.

No. 54506-3-II

in Counts XI and XII, reverse the conviction for tampering with a witness charged in Count IX, and remand to the trial court to dismiss the tampering with a witness charge with prejudice.

FACTS

Law enforcement arrested Walker after he violated a domestic violence order of protection. The  order of protection restricted Walker from contacting the protected party, Walker's ex-girlfriend M.R.M.,[2] directly, indirectly, in person, or through others.

Based on Walker's conduct, the State charged Walker with two counts of intimidating a witness, two counts of first-degree extortion, four counts of tampering with a witness, and four counts of domestic violence felony violation of a court order.  Count IX, tampering with a witness, related to a phone call Walker made to his mother from jail.  Count X, tampering with a witness, related to a phone call Walker made to an individual named Gary,[3] in which Walker gave Gary details about M.R.M. to pass on to U.S. Immigration and Customs Enforcement (ICE).  Count XI, domestic violence felony violation of a court order, related to a phone call Walker made directly to M.R.M.  Count XII, domestic violence felony violation of a court order, related to a phone call Walker made to an emergency support shelter.

---

[2]  We use initials to protect the identity of the domestic violence victim.

[3]  The record does not provide a last name for this individual.

A.      EVENTS TESTIFIED TO AT TRIAL

The following testimony relevant to this appeal was presented to the jury.

1.      Call To M.R.M.

M.R.M. dated Walker for almost three years.  M.R.M. lived with Walker prior to the incidents.  On August 20, 2019, M.R.M. applied for a temporary order of protection, which was granted.  On September 3, 2019, the court granted a one year no contact order.  At some point after she got the orders against Walker, M.R.M. went to an emergency support shelter for victims of domestic violence.

On September 16, M.R.M. received a phone call from Walker.  Walker did not identify himself, but M.R.M. recognized his voice.  Walker said, "I love you," then M.R.M. hung up. Verbatim Report of Proceedings (VRP) (Dec. 18, 2019) at 91.  M.R.M. reported this phone call to the police.  Officer Steven Dennis of the Longview Police Department responded to M.R.M.'s call and attempted to contact Walker through the phone number M.R.M. gave him but was unsuccessful.  Officer Dennis took no other steps to figure out who the phone number belonged to.

2.      Call To The Emergency Support Shelter

Scarlet Hernandez works at an emergency support shelter as a legal advocate.  On September 18, Hernandez received a phone call from Walker.  Walker told Hernandez he knew M.R.M. was staying at the shelter and he wanted his apartment key back.  Walker asked if a supervisor could give him the key.  Hernandez told Walker that she could not confirm or deny whether M.R.M. was staying at the shelter.  Hernandez suggested that Walker talk to his landlord if he needed a key.  At this point, Walker "had a raised tone" and continued to ask for the key.

3

VRP (Dec. 18, 2019) at 104. Walker told Hernandez, "[S]he's lying and she's a criminal and you're housing a criminal." VRP (Dec. 18, 2019) at 105.

Officer Daniel Butler of the Longview Police Department responded to an alleged order of protection violation arising from Walker's September 18 call to Hernandez. Later, Officer Butler spoke with Walker on the phone. Walker admitted that he called the emergency support shelter but said that he did not realize it was a violation of the order of protection. Walker later told Officer Butler that he "realized" it was a violation of the order of protection, calling it a "third-part contact." VRP (Dec. 18, 2019) at 122-23. Walker also said that he did not intend to personally contact M.R.M.; instead, Walker was "trying to get an employee to contact her to get the keys for him." VRP (Dec. 18, 2019) at 123.

Walker admitted that he was served with the order of protection and claimed that he did not call M.R.M. Walker also admitted that he called the emergency support shelter, but he claimed that he did not ask anyone to get a message to M.R.M.; he only asked how he could get his key to his apartment.

3.    Call To Walker's Mother

During trial, the jury heard a phone call Walker made from jail to his mother on August 23:

> [WALKER]:    Can you do me a big favor?
> FEMALE:      Sure.
> [WALKER]:    I've got [UNINTELLIGIBLE] papers.
> FEMALE:      No, I'm driving down the highway.
>
> . . . .
>
> [WALKER]:    Um—

. . . .

> FEMALE: Where—where are you at in Longview?
> [WALKER]: In the Cowlitz County Jail.
> FEMALE: Oh.
> [WALKER]: But, hey, I'll make it. You know what's in my head, right, she's taken all my stuff and [UNINTELLIGIBLE] and taken over my apartment. There's nothing I can do about it. Someone is telling me that I can call ICE on her. I can call ICE on her and I get all my property back because she's been living there.
> FEMALE: Well, i—
> [WALKER]: Let me ask you this [UNINTELLIGIBLE].
> FEMALE: Well, I fished around. She called the cops on me for harassing her, so I can't run back to her.

VRP (Dec. 18, 2019) at 107-08.

4.  Call To Gary

The jury also heard a phone call Walker made to Gary on September 4. In that call, Walker asked Gary to do him a favor and gave Gary the number for ICE. Walker also gave Gary information on M.R.M.'s name, address, and workplace. Walker told Gary to tell "them" that she took over his apartment illegally. VRP (Dec. 18, 2019) at 113. Walker also told Gary that "[M.R.M.] has no passport, no all that, she has no passport, no [UNINTELLIGIBLE], no Social Security. And tell them that she's [UNINTELLIGIBLE] taxes using a fake Social Security number." VRP (Dec. 18, 2019) at 113.

B.  VERDICT AND SENTENCING

The jury found Walker guilty of two counts of tampering with a witness (Counts IX and X), and two counts of violating an order of protection (Counts XI and XII). The trial court imposed 60 months confinement for each tampering with a witness conviction and 60 months for each violation of an order of protection conviction, and ordered that the sentences run concurrently.

Walker appeals.

No. 54506-3-II

ANALYSIS

A. SUFFICIENCY OF THE EVIDENCE

Evidence is sufficient to support a conviction if any rational trier of fact can find the essential elements of the crime beyond a reasonable doubt. *State v. Scanlan*, 193 Wn.2d 753, 770, 445 P.3d 960 (2019), *cert. denied*, 140 S. Ct. 834 (2020). When the sufficiency of the evidence is challenged, the evidence must be viewed in the light most favorable to the State and interpreted most strongly against the defendant. *Id.* Circumstantial and direct evidence are equally reliable. *Id.* "'A claim of insufficiency admits the truth of the State's evidence and all inferences that reasonably can be drawn therefrom.'" *Id.* (quoting *State v. Salinas*, 119 Wn.2d 192, 201, 829 P.2d 1068 (1992)).

1.      Tampering With A Witness Charges In Counts IX And X

Walker argues that the State failed to prove beyond a reasonable doubt that he committed tampering with a witness as charged in Counts IX and X. Count IX related to the phone call Walker made to his mother from jail. Count X related to the phone call Walker made to Gary, who Walker gave M.R.M.' details to so that Gary could call ICE. We agree with Walker on the call he made to his mother (Count IX), but disagree with Walker on the call he made to Gary (Count X).

a.      Legal principles

RCW 9A.72.120 states:

(1) A person is guilty of tampering with a witness if he or she attempts to induce a witness or person he or she has reason to believe is about to be called as a witness in any official proceeding or a person whom he or she has reason to believe may have information relevant to a criminal investigation or the abuse or neglect of a minor child to:

6

(a) Testify falsely or, without right or privilege to do so, to withhold any testimony; or
(b) Absent himself or herself from such proceedings; or
(c) Withhold from a law enforcement agency information which he or she has relevant to a criminal investigation or the abuse or neglect of a minor child to the agency.

RCW 9A.72.120(1)(a)-(c).

"[S]pecific intent to obstruct justice need not be proved." *State v. Rempel*, 114 Wn.2d 77, 85, 785 P.2d 1134 (1990). And an attempt to induce a witness to withhold testimony is not dependent only upon the literal meaning of the words used. *Id.* at 83. Instead, the State may "rely on the inferential meaning of the words and the context in which they were used." *Id.* at 83-84. "[T]he effect of the inducement attempt upon the potential witness is not dispositive," though a witness' reaction may be used to help show the context of the words spoken. *Id.* Further, witness tampering does not require an actual contact with the witness. *State v. Williamson*, 131 Wn. App. 1, 6, 86 P.3d 1221 (2004) (finding sufficient evidence where the defendant asked someone else to talk with the witness about changing her testimony and never personally contacted the witness).

b.      Tampering with a witness as charged in Count IX

Walker argues the State failed to prove he committed tampering with a witness when he called his mother (Count IX) because he did not "attempt[] to induce M.R.M. to take any action related to the ongoing case;" rather, he was calling his mother "to formulate a plan to reclaim his apartment." Br. of Appellant at 11. We agree that the State failed to prove Walker committed tampering with a witness as charged in Count IX.

Here, Walker told his mother, "I can call ICE on her and I get all my property back because she's been living there." VRP (Dec. 18, 2019) at 108. Walker did not ask his mother to call ICE

for him nor did he ask his mother to threaten M.R.M. by telling her Walker would be calling ICE on her. Therefore, the literal meaning of Walker's statements does not reflect an attempt to tamper with M.R.M. as a witness, nor can his statements be reasonably interpreted as an attempt to tamper with M.R.M. as a witness.

The State argues that the context of the conversation shows that Walker was asking his mother for help to get M.R.M. deported. The State relies on the fact that, when Walker first called his mother, Walker asked her, "Can you do me a big favor?" VRP (Dec. 18, 2019) at 107. Although she first responded, "Sure," she then said, "No, I'm driving down the highway." VRP (Dec. 18, 2019) at 107. Walker's mother then asked him other questions before Walker made his statement regarding his calling ICE to get his property back. Walker never asked his mother to call ICE nor did he ask her to call M.R.M. to threaten her with calling ICE to get her deported. Therefore, while Walker did ask for help, the record does not support the inference that Walker was asking his mother to help him contact ICE to get M.R.M. deported. Accordingly, we hold that there was not sufficient evidence for a rational trier of fact to find beyond a reasonable doubt that Walker committed tampering with a witness in his call to his mother (Count IX).

c. Tampering with a witness as charged in Count X

Walker argues that the statements he made in the phone call to Gary (Count X) do not "contain any inducement directed towards [M.R.M.] to testify falsely, withhold testimony, absent herself from official proceedings, or withhold relevant information from law enforcement." Br. of Appellant at 12. We disagree.

Here, Walker called Gary while Walker was in jail and asked Gary for a favor. Walker then gave Gary the phone number for ICE and told Gary to tell "them" that M.R.M. had taken over

his apartment illegally. VRP (Dec. 18, 2019) at 113. Walker gave Gary M.R.M.'s name, address, and workplace. He further told Gary that "[M.R.M.] has no passport, no all that, she has no passport, no [UNINTELLIGIBLE], no Social Security. And tell them that she's [UNINTELLIGIBLE] taxes using a fake Social Security number." VRP (Dec. 18, 2019) at 113.

Taken in the light most favorable to the State, a rational trier of fact could reasonably infer that Walker was attempting to have Gary assist him in getting M.R.M. deported or at least taken into custody by calling ICE. *See State v. Sanders*, 66 Wn. App. 878, 889-90, 833 P.2d 452 (1992), *review denied*, 120 Wn.2d 1027 (1993) (causing child witness to be removed from her home and unavailable for two years by ordering and arranging for child's transport out of the state). If M.R.M. was deported or taken into custody, she would be unable to testify against Walker. Therefore, the statements made by Walker to Gary represent an attempt to induce the witness to be absent from official proceedings.

Walker contends that there was insufficient evidence because M.R.M. was not a party to the phone call, nor does Walker direct Gary to contact M.R.M. However, the crime of witness tampering does not require an actual contact with the witness. *Williamson*, 131 Wn. App. at 6.

Walker also contends that nothing in his conversation with Gary suggests that the purpose of calling ICE was to prevent her from testifying or appearing in court. But "specific intent to obstruct justice need not be proved." *Rempel*, 114 Wn.2d at 85. Here, it can be reasonably inferred that the purpose of the call was to have Gary call ICE in an attempt to absent M.R.M. as a witness. *See Sanders*, 66 Wn. App. at 890. Therefore, we hold that there is sufficient evidence for a rational trier of fact to find beyond a reasonable doubt that Walker's call to Gary was an attempt to tamper with a witness as charged in Count X.

2.       Violation Of A Protection Order As Charged In Count XII

Walker argues that the State failed to prove beyond a reasonable doubt that he violated the order of protection as charged in Count XII. Specifically, Walker claims that the State failed to prove that he contacted or attempted to contact M.R.M. through a third party when he called the emergency support shelter and spoke to Hernandez.

An individual violates an order of protection if an order of protection exists, the individual knows of the order of protection, and the individual willfully violates the restraint provisions prohibiting contact with a protected party. RCW 26.50.110(1)(i). "A defendant acts willfully if he acts knowingly with respect to the material elements, including the contact element." *State v. Sisemore*, 114 Wn. App. 75, 78, 55 P.3d 1178 (2002).

Here, a court granted M.R.M. a temporary order of protection against Walker on August 20, 2019, and a one year no contact order against Walker on September 3, 2019. Walker was prohibited from contacting M.R.M. directly, indirectly, in person or through others. Walker admitted that he was aware of the protection order.

On September 18, Walker contacted the emergency support shelter, where he knew M.R.M. was staying. Hernandez, who answered the phone call, testified, "He wanted his apartment key, said that he knew that [M.R.M.] was staying at the shelter." VRP (Dec. 18, 2019) at 103. Officer Butler spoke with Walker after the phone call to Hernandez. While Walker initially denied knowing that his actions violated the order of protection, he "ultimately began to explain that he realized now that what he was doing was basically a violation of the order." VRP (Dec. 18, 2019) at 122. Walker told Officer Butler, "That's called a third-party contact and . . . that's breaking a no contact order." VRP (Dec. 18, 2019) at 123. Walker also told Officer Butler that

he did not intend to contact M.R.M., but he was trying to get an employee to contact her. Based on this evidence, a rational trier of fact could find beyond a reasonable doubt that Walker violated the protection order because the order prohibited contacting the protected party indirectly or through others.

Walker contends that no violation occurred because M.R.M. was not even aware that Walker contacted the emergency support shelter. However, it is not necessary to determine whether M.R.M. knew of the phone call. *See State v. Ward*, 148 Wn.2d 803, 816, 64 P.3d 640 (2003) (holding it was not necessary to determine whether the protected party knew of the phone call because the no contact order prohibited contact through an intermediary).

Walker also contends that the evidence showed that Walker's intent in calling the emergency support shelter was to retrieve his apartment key and not to contact M.R.M. Walker testified that he did not ask anyone to get a message to M.R.M.; rather, he only asked how he could get his key to his apartment. However, Walker told Officer Butler that he was trying to get an employee at the shelter to contact M.R.M. Though this testimony contradicts Walker's, we do not review credibility determinations made by the fact finder on appeal. *State v. Brockob*, 159 Wn.2d under RCW 26.50.110.311, 336, 150 P.3d 59 (2006). Therefore, a rational trier of fact could have found beyond a reasonable doubt that Walker intended to have contact with M.R.M. through a third-party based on Officer Butler's testimony. Thus, we hold that there is sufficient evidence to support Walker's conviction for violating the order of protection as set forth in Count XII.

11

B.    STATEMENT OF ADDITIONAL GROUNDS

   1.    Violation Of A Protection Order As Charged In Count XI.

Walker argues that there is insufficient evidence to support the violation of an order of protection as charged in Count XI, which arose from the phone call Walker made directly to M.R.M., because the State failed to show evidence of where the phone call to M.R.M. came from. We disagree.

An individual violates an order of protection if an order of protection exists, the individual knows of the order of protection, and the individual willfully violates the restraint provisions prohibiting contact with a protected party. RCW 26.50.110(1)(i). "A defendant acts willfully if he acts knowingly with respect to the material elements, including the contact element." *Sisemore*, 114 Wn. App. at 78.

As stated above, a court entered a temporary order of protection against Walker on August 20, 2019, and a one year no contact order against Walker on September 3, 2019. Walker was prohibited from contacting M.R.M. Walker was aware of the orders of protection.

Despite Walker knowing about the orders of protection, M.R.M. testified that she received a phone call from Walker on September 16. M.R.M. stated that Walker did not identify himself, but she recognized his voice. Walker said, "I love you," then M.R.M. hung up. VRP (Dec. 18, 2019) at 91. Based on this evidence, a rational trier of fact could find beyond a reasonable doubt that Walker contacted M.R.M. in violation of the order of protection.

Walker claims that "the police investigating failed to contact the person who called [M.R.M.]." SAG at 1. The record shows that Officer Dennis tried to contact Walker through the phone number used to call M.R.M., but he was unsuccessful. However, the fact that Officer Dennis

12

took no further steps to investigate the phone number does not affect the sufficiency of the evidence presented by the State. M.R.M. testified that Walker was the individual who called her. Based on the evidence, we hold that there was sufficient evidence for a rational trier of fact to find beyond a reasonable doubt that Walker violated the order of protection as charged in Count XI.

 2. Violation Of A Protection Order As Charged In Count XII[4]

Walker argues that there is insufficient evidence to support his conviction for violation of an order of protection as charged in Count XII because the phone call he made to Hernandez at the emergency support shelter was made to get assistance on how to obtain his apartment key. The sufficiency of the evidence for Count XII was raised in Walker's direct appeal and has been addressed above. Therefore, we do not address this issue raised in the SAG. *See State v. Thompson*, 169 Wn. App. 436, 493, 290 P.3d 996 (2012), *review denied*, 176 Wn.2d 1023 (2013) (stating that the court only considers arguments that it has not already adequately addressed as raised by the defendant's appellate counsel).

## CONCLUSION

Sufficient evidence supports Walker's conviction for tampering with a witness based on his call to Gary (Count X) and the convictions for violation of an order of protection based on his calls to M.R.M. and the emergency support shelter (Counts XI and XII), but there was insufficient evidence to support the conviction for tampering with a witness based on Walker's call to his

---

[4] Walker's SAG challenges the charge related to his contact with Hernandez at the emergency support shelter, but claims that charge is "Tampering with A Witness." SAG at 1. The charge arising from Walker's contact with Hernandez at the emergency support shelter is a violation of an order of protection. Because there is no tampering with a witness charge arising from Walker's call to Hernandez at the emergency support shelter, we treat Walker's arguments as challenging the violation of an order of protection as charged in Count XII.

No. 54506-3-II

mother (Count IX). Therefore, we affirm the conviction for tampering with a witness conviction as charged in Count X and the convictions for violation of an order of protection as charged in Counts XI and XII, reverse the conviction for tampering with a witness as charged in Count IX, and remand for the trial court to dismiss the tampering with a witness charge with prejudice.

A majority of the panel having determined that this opinion will not be printed in the Washington Appellate Reports, but will be filed for public record in accordance with RCW 2.06.040, it is so ordered.

Lee, J.

We concur:

Maxa, P.J.

Price, J.